# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| MILA US INC, | § | Case No. 1:25-cv-01359-ADA |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| NVIDIA CORPORATION, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## <u>NVIDIA CORPORATION'S CLAIM CONSTRUCTION REPLY BRIEF</u>

**TABLE OF CONTENTS**

**Page**

I.      U.S. PATENT NO. 7,757,048 ............................................................................................. 1

II.     U.S. PATENT NO. 7,805,578 ............................................................................................. 1

    A.      "memory interface block" ........................................................................................ 1

        1.      This limitation is means-plus-function. ....................................................... 1

        2.      This limitation is indefinite. ........................................................................ 3

III.    U.S. PATENT NO. 7,924,296 ............................................................................................. 4

    A.      "wherein the plurality of image tiles are generated..." ........................................... 4

IV.     U.S. PATENT NO. 7,966,436 ............................................................................................. 5

    A.      Preamble ................................................................................................................... 5

    B.      "setting data" and "device data" ............................................................................. 7

    C.      "a low-speed transmission unit…" .......................................................................... 9

        1.      This limitation is means-plus-function. ....................................................... 9

        2.      This limitation is indefinite. ...................................................................... 10

V.      U.S. PATENT NO. 8,151,136 ........................................................................................... 11

    A.      Preambles ............................................................................................................... 11

VI.     U.S. PATENT NO. 8,275,975 ........................................................................................... 13

    A.      Preamble ................................................................................................................. 13

    B.      "the status information consisting of…" ................................................................ 13

    C.      "embedded processor" ........................................................................................... 15

    D.      "third hardware functional unit" ........................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Med. Sys., Inc. v. Biolitec, Inc.*,
618 F.3d 1354 (Fed. Cir. 2010)..................................................................................................6

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*,
637 F.3d 1324 (Fed. Cir. 2011)..................................................................................................5

*Amgen Inc. v. Amneal Pharms. LLC*,
945 F.3d 1368 (Fed. Cir. 2020)................................................................................................14

*Azurity Pharms., Inc. v. Alkem Lab'ys Ltd.*,
133 F.4th 1359 (Fed. Cir. 2025) ..............................................................................................15

*Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*,
533 F.3d 1362 (Fed. Cir. 2008)..................................................................................................2

*Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*,
55 F.3d 615 (Fed. Cir. 1995)......................................................................................................6

*Blackboard, Inc. v. Desire2Learn, Inc.*,
574 F.3d 1371 (Fed. Cir. 2009)..............................................................................................2, 3

*C.W. Zumbiel Co., Inc. v. Kappos*,
702 F.3d 1371 (Fed. Cir. 2012)..................................................................................................6

*CIAS, Inc. v. All. Gaming Corp.*,
504 F.3d 1356 (Fed. Cir. 2007)................................................................................................14

*Cloud Byte LLC v. Dell, Inc.*,
No. 2:24-cv-00637, ECF No. 152 (E.D. Tex. Nov. 9, 2025)......................................................2

*Cochlear Bone Anchored Sol. AB v. Oticon Med. AB*,
958 F.3d 1348 (Fed. Cir. 2020)................................................................................................12

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
438 F.3d 1374 (Fed. Cir. 2006)..........................................................................................11, 16

*Digene Corp. v. Third Wave Techs., Inc.*,
323 F. App'x 902 (Fed. Cir. 2009) ...........................................................................................15

*Electro Sci. Indus., Inc. v. Dynamic Details, Inc.*,
307 F.3d 1343 (Fed. Cir. 2002)..................................................................................................6

*Fiber, LLC v. Ciena Corp.*,
792 F. App'x 789 (Fed. Cir. 2019) ...............................................................................10, 11

*In re Fought*,
941 F.3d 1175 (Fed. Cir. 2019)...........................................................................5, 6, 11, 13

*Galderma Lab'ys, L.P. v. Amneal Pharms. LLC*,
806 F. App'x 1007 (Fed. Cir. 2020) .................................................................................4, 5

*Gilead Scis., Inc. v. Watson Lab'ys, Inc.*,
No. CV 15-2350 (RMB/JS), 2016 WL 1690306 (D.N.J. Apr. 26, 2016)................................17

*Intel Corp. v. Qualcomm Inc.*,
21 F.4th 801 (Fed. Cir. 2021) ..........................................................................................4, 8

*Marrin v. Griffin*,
599 F.3d 1290 (Fed. Cir. 2010)...........................................................................................13

*MTD Prods. Inc. v. Iancu*,
933 F.3d 1336 (Fed. Cir. 2019)..............................................................................................3

*Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*,
831 F.3d 1350 (Fed. Cir. 2016)......................................................................................13, 15

*Noah Sys., Inc. v. Intuit Inc.*,
675 F.3d 1302 (Fed. Cir. 2012)...............................................................................................2

*Novo Indus., L.P. v. Micro Molds Corp.*,
350 F.3d 1348 (Fed. Cir. 2003).............................................................................................17

*Orange Elec. Co. v. Autel Intelligent Tech., Corp.*,
No. 2:21-CV-00240-JRG, 2023 WL 300137 (E.D. Tex. Jan. 18, 2023) ................................9

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
778 F.3d 1021 (Fed. Cir. 2015)...............................................................................................6

*Panasonic Corp. v. Magna Int'l Inc.*,
No. 6:21-CV-319-ADA, 2022 WL 625089 (W.D. Tex. Mar. 3, 2022)........................6, 7, 11

*Proveris Sci. Corp. v. Innovasystems, Inc.*,
739 F.3d 1367 (Fed. Cir. 2014)...............................................................................................7

*Team Worldwide Corp. v. Intex Recreation Corp.*,
No. 2020-1975, 2021 WL 4130634 (Fed. Cir. Sept. 9, 2021) ..................................................3

*TherapeuticsMD, Inc. v. Teva Pharms. USA, Inc.*,
No. 2:20-CV-03485 (BRM) (SDA), 2026 WL 63493 (D.N.J. Jan. 8, 2026)..........................14

*Trusted Knight Corp. v. Int'l Bus. Machines Corp.*,
    681 F. App'x 898 (Fed. Cir. 2017) ...................................................................................17

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015)................................................................................1, 3, 9

NVIDIA respectfully submits this reply brief in support of its proposed constructions.

## I.    U.S. PATENT NO. 7,757,048

Counsel for Mila state in their brief that they are no longer pursuing claims 29 and 40 of the '048 Patent, which recite a "data transferor."  They have separately informed NVIDIA that they are dropping claims 30-31 and 34 of the '048 Patent, which depend from claim 29.  Based on those representations, NVIDIA no longer seeks construction of "data transferor."

## II.   U.S. PATENT NO. 7,805,578

### A.    "memory interface block"

#### 1.    This limitation is means-plus-function.

Mila's position that "memory interface block" connotes sufficiently definite structure is meritless.  If that were so, Mila would articulate that structure.  Mila does not.  Mila merely asserts that "memory interface block" has "structural meaning."  (Resp. at 5.)  But the test for means-plus-function claiming is not whether a term has "structural meaning," but rather whether it connotes a *sufficiently definite* structure.  *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015).  It does not.  It is just a black box that performs the recited functions.

Mila's attempt to rely on the specification to supply structure to "memory interface block" conflates *identification* of means-plus-function terms with *construction* of those terms. The identification test is not whether the specification discloses structure, but rather whether a term is "understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure."  *Id.* at 1349.  One would never reach the step of construing means-plus-function terms by identifying corresponding structures in the specification, *see id.* at 1351-54, if a specification's disclosure of structure meant that the terms were not means-plus-function.

Even if Mila's conflation of identification and construction were proper, Mila's arguments still would fail, because the specification does *not* disclose a sufficiently definite

structure for this term.  Mila misses the point when it argues that the specification discloses that the separately claimed "'memory interface' may be formed as part of an 'integrated circuit.'" (Resp. at 5.)  Because "memory interface" is a different limitation, it cannot provide structure for "memory interface **block**."  *See Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008) ("Different claim terms are presumed to have different meanings."); *Cloud Byte LLC v. Dell, Inc.*, No. 2:24-cv-00637, ECF No. 152 at 12-13 (E.D. Tex. Nov. 9, 2025) ("'rebuild module'" "not part of the corresponding structure for the 'means of rebuilding'" because claim "separately recite[d] 'a rebuild module'" for a different function).

Mila's reliance on the specification's disclosures that the memory interface block generates signals (Resp. at 5) is misplaced for two reasons.  First, Mila asserts only that the signals "turn[] the memory on and off," without identifying a structure that generates them. (Resp. at 5.)  As in *Blackboard*, "the language 'describes an outcome, not a means for achieving that outcome.'"  *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1384 (Fed. Cir. 2009). Second, the recited functions for the memory interface block—including transferring data to multiple memory locations and controlling memory to transfer data to processor units—go beyond the mere capability to "turn[] memory on and off."  (*See* Subramanian Decl. ¶¶ 64-66.) Corresponding structure "must include all structure that actually performs the recited function." *See Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1314 (Fed. Cir. 2012) (citing *Default Proof Credit Card Sys.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005)).

Recognizing that the "memory interface block" itself does not connote any definite structure, Mila points to features outside the block, namely "data bus[es]."  (Resp. at 3-4.)  But external features cannot supply missing structure for a term that is defined only by its function.

Mila also errs by relying on the examiner's silence on § 112 ¶ 6, as the Federal Circuit

has held that is entitled to no weight. *Team Worldwide Corp. v. Intex Recreation Corp.*, No. 2020-1975, 2021 WL 4130634, at *6 n.8 (Fed. Cir. Sept. 9, 2021) ("We also reject TWW's argument that the examiner's silence during prosecution with respect to applicability of § 112(f) . . . is entitled to weight in our analysis."); *see also MTD Prods. Inc. v. Iancu*, 933 F.3d 1336, 1345 (Fed. Cir. 2019) (finding claims subject to § 112 ¶ 6 on request of the patent owner, despite silence on § 112 ¶ 6 during prosecution).  Furthermore, the examiner did not have the *Williamson* decision, which "abandon[ed] characterizing as 'strong' the presumption that a limitation lacking the word 'means' is not subject to § 112, para. 6." *Williamson*, 792 F.3d at 1349.

### 2.    This limitation is indefinite.

Mila's arguments that the specification discloses structure for the "memory interface block" erroneously rely on ***functions*** attributed to that block.  (Resp. at 6-8.)  To support the first function—transferring a predetermined data unit to a plurality of memory locations—Mila points only to statements that the "memory interface block" transfers data, controls data, or generates signals.  (*See id.*)  But those statements "say[] nothing about how . . . those functions are performed" or by what structure.  *See Blackboard*, 574 F.3d at 1384.

Mila's reference to surrounding structures—particularly data buses—cannot cure this defect either.  Mila admits that the data buses are separate from—and merely connected to—the "memory interface block."  (Resp. at 3, 4.)  Moreover, a data bus is just "a channel for data," not structure capable of performing the claimed transfer functions.  (Subramanian Decl. ¶¶ 64-65.)

Also consider Mila's argument for the second recited function of partially controlling memory to transfer data to one or more processing units.  Its claim that "the '578 Patent teaches that the memory interface block has its own independent control functionality," (Resp. at 7-8), is explicitly ***functional***.  It cannot provide the missing ***structure*** for the memory interface block.

### III.    U.S. PATENT NO. 7,924,296

#### A.    "wherein the plurality of image tiles are generated..."

Mila does not articulate what it thinks this term means but does state: "The plain meaning of 'when' . . . encompasses a temporal relationship that includes generation during or as part of the fetching process, without requiring the rigid 'at the moment of' limitation NVIDIA proposes." (Resp. at 8.)  NVIDIA's construction is not so rigid.  NVIDIA *agrees* the limitation encompasses generation during or as part of fetching.  NVIDIA also agrees that it encompasses a "multi-step process."  (*See* Resp. at 9 (citing '296 Patent, Fig. 3).)  NVIDIA is amenable to an alternative construction that replaces "at the moment of" with "during or as part of."

The intent of NVIDIA's original construction was not to preclude multi-step processes, but rather to convey that tiles are generated via the fetching process, not before it.  Mila appears to concede that point.  Mila does not dispute that a construction that allows fetching pre-existing tiles would render this limitation redundant to other claim limitations, which is "highly disfavored."  *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 809–10 (Fed. Cir. 2021).

Although the parties appear to agree on that key point, Mila did not say so expressly.  Furthermore, NVIDIA disagrees with Mila's arguments downplaying the significance of the applicants' prosecution statements.  Thus, NVIDIA will rebut those arguments here.

Mila does not contest that the applicants stated during prosecution that the prior-art reference Morimoto does not meet this limitation because its tiles exist prior to fetching.  (*See* Resp. at 9.)  For the reasons discussed in NVIDIA's opening brief, that reinforces the conclusion that the claims should be construed to exclude fetching pre-existing tiles.

Mila's reliance on *Galderma Laboratories, L.P. v. Amneal Pharmaceuticals LLC*, 806 F. App'x 1007 (Fed. Cir. 2020) is misplaced, as *Galderma* pertains to the doctrine of prosecution disclaimer, which NVIDIA does not argue here.  *Id.* at 1010-11.  NVIDIA instead uses the

applicants' prosecution statements "to inform claim construction," which has a lower bar than disclaimer. *Id.* at 1011 ("A prosecution history statement may inform the proper construction of a term without rising to the level of a clear and unmistakable disclaimer."). Neither party in *Galderma* used the prosecution statements to inform claim construction, because they agreed on the correct construction absent a finding of disclaimer. *Id.* at 1011.

The leading Federal Circuit case on the use of prosecution statements to inform claim construction is *American Piledriving Equipment, Inc. v. Geoquip, Inc.*, 637 F.3d 1324 (Fed. Cir. 2011). In fact, *Galderma* distinguishes *American Piledriving* on the ground that "the statements [in *American Piledriving*] were used to inform claim construction" instead of to support a disclaimer argument. 806 F. App'x at 1011. Thus, Mila is wrong that "*Galderma* controls under these circumstances." (Resp. at 10 n.5.) *American Piledriving* controls.

Mila's attempt to distinguish *American Piledriving* from this case fails. Mila's assertion that the applicant's remarks there "remained the operative basis for distinguishing prior art" is untrue. (*Id.*) Just as here, the examiner there disagreed with the applicant's remarks, prompting the applicant to "ma[ke] multiple [new] arguments to overcome the asserted prior art reference." *Am. Piledriving*, 637 F.3d at 1336. Still, the Federal Circuit construed the limitation consistent with the applicant's remarks. *Id.* The Court should do the same here.

## IV.   U.S. PATENT NO. 7,966,436

### A.   Preamble

Mila has no persuasive rebuttal to NVIDIA's primary argument—that the preamble is limiting because it provides antecedent basis. (Resp. at 14.) Mila concedes that the Federal Circuit has "repeatedly held a preamble limiting when it serves as antecedent basis for a term appearing in the body of a claim." *In re Fought*, 941 F.3d 1175, 1178 (Fed. Cir. 2019). Basic grammar dictates that "the display device" and "the data processor" recited in the claim body

refer to the "display device" and "data processor" recited in the preamble.  The preamble is limiting for that reason alone.  *Id.* at 1178.

Mila errs by equating this claim to the claim in *American Medical Systems, Inc. v. Biolitec, Inc.*, 618 F.3d 1354 (Fed. Cir. 2010).  That claim read: "A method for photoselective vaporization of tissue, comprising: delivering laser radiation to a treatment area on the tissue . . . ."  *Id.* at 1356.  The court found that the uncountable noun "tissue" in the preamble referred to *generic* tissue, while the term "the tissue" in the claim body referred to *particular* tissue.  *Id.* at 1359.  Thus, the preamble was not an antecedent basis for "the tissue" in the claim body.  This result stems from a quirk of grammar: "tissue" can mean both a class of biological material and a specific biological object.  One can say, for example, that "tissue is composed of cells" (generic) or that "this heart tissue in this patient was damaged" (specific).

The same is not true for "display device" and "data processor."  These terms refer to particular objects, not generic concepts.  "The display device" and "the data processor" in the body mean the ones in the preamble, so the preamble is limiting.  *See Fought*, 941 F.3d at 1178 (preamble reciting "travel trailer" limiting where body recited "the travel trailer").[1]

Mila is also wrong that the "preamble merely states an intended use of the invention." (Resp. at 12.)  The Federal Circuit squarely rejected that argument in *Fought*.  941 F.3d at 1178 (preamble not "a statement of intended use" when it provides antecedent basis).

Mila's reliance on *Panasonic Corp. v. Magna Int'l Inc.*, No. 6:21-CV-319-ADA, 2022 WL 625089 (W.D. Tex. Mar. 3, 2022) is also misplaced.  The preamble phrase at issue there—

---

[1] *See also C.W. Zumbiel Co., Inc. v. Kappos,* 702 F.3d 1371, 1385 (Fed. Cir. 2012) (preamble reciting "containers" limiting where body recited "the containers"); *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 621 (Fed. Cir. 1995); *Electro Sci. Indus., Inc. v. Dynamic Details, Inc.,* 307 F.3d 1343, 1348 (Fed. Cir. 2002); *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1024 (Fed. Cir. 2015) (all similar).

"suitable for use for…"—literally expressed a statement of intended use. *Id.* at *18. It was that fact—coupled with the claim body's recitation of a structurally complete invention—that led the court to decide that the preamble was non-limiting. *Id.* Here, by contrast, "display device" and "data processor" are not statements of intended use. Rather, they are core parts of the claimed invention that are referenced repeatedly by limitations in the claim body.

Mila's claim differentiation argument is also unavailing. The main difference between claim 1 and claim 10 is that claim 10 adds a "data receiver." Because the data receiver is not a component of the data transmitter recited in the preamble of claim 1, claim 10 *required* a different preamble. That fully explains the difference in the claims' preambles. Mila thus errs by attributing the difference to an intent for claim 1's preamble to be non-limiting.

Finally, Mila has no serious counter to NVIDIA's showing that the preambles recite the essential arrangement of components set forth in the patent's Summary section. Mila's narrow focus on the patent's title and omission of any discussion of the patent's Summary section is inconsistent with Federal Circuit law. (*See* Resp. at 14.) *See Proveris Scientific Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1372 (Fed. Cir. 2014) (relying on Summary section).

**B.    "setting data" and "device data"**

Mila fails to provide a reasonably certain meaning for these terms, confirming their indefiniteness. Mila does not dispute that these terms lacked established meanings in the art. (*See* Subramanian Decl. ¶¶ 68, 70–73.) But Mila offers no tenable definitions.

Mila's position that "setting data" and "device data" refer to *any* data transmitted at high speed or low speed is plainly incorrect. (Resp. at 14, 15.) Take "device data" for example. Claim 1 requires "transmit[ting] secondary data . . . in a low-speed mode" and that "the secondary data includes device data." Interpreting "device data" to mean any data transmitted at low speed would make the latter limitation superfluous, as the former limitation already states

that secondary data is transmitted at low speed.[2]  *See Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801,

809–10 (Fed. Cir. 2021) ("highly disfavored" to construe limitations as superfluous).

Furthermore, Mila does not contest that the specification provides overlapping examples

of device data and setting data.  Rather, Mila acknowledges—even embraces—that the

specification discloses that brightness—as well as low-power driving commands—can be both

setting data (sent at high speed) and device data (sent at low speed).  (Resp. at 18-19.)  Mila

argues that there is no conflict because the choice is "implementation-specific."  (*Id.*)  But saying

that the choice is implementation-specific does not resolve the ambiguity; it confirms it.  If the

same data can be "setting data" when sent at high speed and "device data" when sent at low

speed, the specification provides no objective boundary separating the two terms.  A POSITA

therefore cannot determine, with reasonable certainty, what data falls within each category.

That uncertainty is dispositive because the claims turn on the distinction between the two

categories: setting data must be sent at high speed, while device data must be sent at low speed.

Mila's construction collapses that distinction by treating the terms as labels for any data

transmitted at the claimed speeds.  That is not just "broad," as Mila contends; it is tautological.

Thus, "setting data" and "device data" should be found indefinite for uncertain scope.

Finally, regarding "device data," Mila does not dispute that the specification provides no

definition or examples and instead discusses only "device control data."  Nor does Mila contest

that "device data" presumably encompasses something more than device control data, because

the modifier "control" narrows "device data."  "Device data" should be found indefinite for this

additional, independent reason.

---

[2] The same is true for "setting data."  Claim 1's statement that primary data includes "setting data" would be superfluous if "setting data" meant any data transmitted at high speed, because claim 1 later states that packets of primary data are transmitted at high speed.

C.      "a low-speed transmission unit…"

1.      **This limitation is means-plus-function.**

Mila's arguments that "low-speed transmission unit" connotes a sufficiently definite structure are incorrect. If that were true, one would have expected Mila to articulate something for that structure. Mila never does.

Instead, Mila mistakenly equates structure with *function*. Mila says, for example: "claim 1 defines the specific operations of the 'low speed transmission unit' and how those operations are performed within the architecture of the 'data transmitter' in a way that connotes structure." (Resp. at 12.) If this logic held, no term that recites functions could be means-plus-function, because one could always declare that those functions "connote structure."

Moreover, "connotes structure" is not the test. The means-plus-function test is whether a term connotes a "sufficiently definite structure." *Id.* at 1349.

Mila's argument that the specification shows that "low-speed transmission unit" connotes a sufficiently definite structure is similarly off-base. (Resp. at 22-24.) When determining whether a limitation is means-plus-function, the question is whether it is "understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Williamson*, 792 F.3d at 1349. Mila's position that the specification discloses structure is tangential and conflates means-plus-function term identification with construction.

Lacking a good argument that "low-speed transmission unit" connotes a sufficiently definite structure, and unable to articulate any such structure, Mila relies heavily on district court cases to fill the void. (Resp. at 20-21.) These cases addressed terms in different patents with different specifications involving different technologies. As Mila acknowledges, another court found "transmission module" to be means-plus-function. *See, e.g., Orange Elec. Co. v. Autel Intelligent Tech., Corp.*, No. 2:21-CV-00240-JRG, 2023 WL 300137, at *5 (E.D. Tex. Jan. 18,

2023).  Mila does not argue that "unit" is more structural than "module."  Rather, Mila criticizes the patentee there for "proffer[ing] no evidence of how a POSITA would understand 'transmitting module.'"  (Resp. at 21 n.10 (alterations omitted).)  But that is exactly the problem here: Mila and Dr. Brogioli articulate no structure for "low-speed transmission unit."

Therefore, "low-speed transmission unit" is means-plus-function.[3]

### 2.    This limitation is indefinite.

Mila's only argument for definiteness is that "NVIDIA and its expert[] understand[] that the [transmitting] function[] can be performed by 'analog circuitry.'"  (Resp. at 24.)  This fails for two reasons.  First, it is irrelevant that NVIDIA's expert would know how to design a high-speed transmitter, as the sole question is what the specification discloses.  *Fiber, LLC v. Ciena Corp.*, 792 F. App'x 789, 796 (Fed. Cir. 2019) ("[T]he definiteness requirement is that the *specification* adequately disclose corresponding structure.  Expert testimony cannot create structure where none is adequately disclosed in the specification.").  The specification does not mention "analog circuitry."  (*See* Subramanian Decl. ¶ 82.)

Second, Mila overlooks that claim 1 recites a *receiving* function for the low-speed transmission unit, not just a transmitting function.  Mila and Dr. Brogioli identify no structure for the receiving function.  Elsewhere in its brief, Mila notes that the specification discloses that the data transmitter can be connected to the display device through "lanes."  (Resp. at 23-24.)  But as Mila appears to acknowledge, lanes are not the structure of the transmission unit, but rather the inputs and outputs.  (*See id.*)  Thus, Mila places all its reliance on Dr. Brogioli's assertion that a POSITA would understand that "hardware circuitry" can "receive data through electrical

---

[3] NVIDIA did not identify "high-speed transmission unit" for construction because that term raised similar issues to "low-speed transmission unit" and Judge Albright's Order Governing Patent Cases imposed a limit of 12 terms.  Mila's criticism on that issue is unfounded.

connections." (Resp. at 24.) But that fails too, as the question is not what a POSITA would "understand," but rather what the specification discloses. *Fiber*, 792 F. App'x at 796. The specification discloses no "hardware circuitry" or any other structure for the low-speed transmission unit's receiving function. Therefore, this term is indefinite.

## V.     U.S. PATENT NO. 8,151,136

### A.     Preambles

*Claim 9.* Mila's analysis of the claim 9 preamble, much like its analysis of the disputed preamble for the '436 patent, fails to rebut NVIDIA's primary argument—that the preamble is limiting because it provides antecedent basis for the claimed "main processor" and "application processor." *Fought*, 941 F.3d at 1178. The preamble's "main processor" and "application processor" are plainly the antecedent bases for "the main processor" and "the application processor" in the body of the claim, and Mila presents no coherent argument otherwise. Instead, Mila mistakenly analogizes the preamble here to the preamble phrase "suitable for use…" in *Panasonic*. 2022 WL 625089, at *18. That phrase expressly recited a statement of intended use; "main processor" and "application processor" do not. *See Fought*, 941 F.3d at 1178.

Mila also has no good response to NVIDIA's showing that the preamble recites essential structure. Mila does not contest that a key aspect of the invention is that "the main processor sends the application processor bootup ***control*** commands instead of boot code." (NVIDIA Op. Br. at 20–21 (citing '136 patent at 4:57–60, 11:54–55).) Thus, the preamble's recitation that the main processor controls the application processor is rooted in the specification's core teachings. The preamble is limiting for this additional reason.

Mila's response to NVIDIA's third argument—that the preamble should be found limiting because it distinguishes different claims—only strengthens NVIDIA's position. NVIDIA *agrees* with Mila that claim 9 identifies components of the main processor and claim 16

identifies components of the application processor. (Resp. at 26.) But the only reason that is true is that the preamble phrases "the main processor comprising" in claim 9 and "the application processor comprising" in claim 16 are limiting. Otherwise, the recited structures of an "interface unit" and "controller" could be components of *anything*. Mila's tacit agreement with NVIDIA's position confirms that NVIDIA's position is correct.

Mila's proposal that only a portion of the preamble be found limiting is incorrect. (Resp. at 25.) This is not a case like *Cochlear Bone Anchored Sol. AB v. Oticon Medical AB*, 958 F.3d 1348, 1355 (Fed. Cir. 2020), which found a portion of a preamble stating an intended use non-limiting. The preamble here recites "main processor" and "application processor" four times and links them together with the "control" language. Because there is no extraneous language of intended use to excise, the entire preamble should be found limiting.

**Claim 20.** Mila agrees that the term "main processor" in the preamble is limiting because it serves as an antecedent basis for "main processor" in the body of the claim. Furthermore, Mila does not contest NVIDIA's showing that the preamble's statement that the main processor performs error correction reflects teachings in the patent's Abstract and Summary. Mila's only "counterargument" to the preamble being limiting appears instead to be a tacit admission. (Resp. at 20 ("Yet, NVIDIA seems to ignore that the cited aspects of the '136 Patent explain that '[t]he present invention also provide a method and a device for correcting a code data error …', *which is already captured by the preamble of claim 20*.").) In making that argument, Mila tacitly accepts NVIDIA's point: the preamble's recitation of "a code data error correcting method by a main processor" is indeed a claim limitation. Because the preamble contains no non-vital language, such as an intended use, the entire preamble is limiting.

- 12 -

## VI.     U.S. PATENT NO. 8,275,975

### A.     Preamble

Mila does not dispute that the preamble provides the antecedent basis for "said SoC."

That alone makes it limiting.  *Fought*, 941 F.3d at 1178.

Mila's argument that "said SoC" is "understandable" without the preamble is baseless.

(Resp. at 27-28.)  The case Mila cites, *Marrin v. Griffin*, 599 F.3d 1290 (Fed. Cir. 2010),

considered a preamble reciting a "statement of purpose," not an antecedent basis.  *Id.* at 1295.

Mila's argument that "SoC" is a mere "descriptor" ignores the specification's emphasis

that an SoC is a key feature. (*See, e.g.*, '975 Patent, 3:34-37 ("Sequencer 110 is designed to

relieve the embedded processor . . . from controlling . . . events on the SOC chip."); 1:55-58

("[T]he prior art does not address an SOC environment with . . . a controller for increasing

parallelism."), 2:53-56 ("Fig. 1 . . . show[s] a general system view of where the Sequencer fits in

the SOC design.").)  The preamble is limiting for this additional reason.

Mila is also wrong about the prosecution history.  The applicants repeatedly distinguished

prior art on the ground that it "failed to disclose or suggest a sequencer controlled system for *a

system-on-chip (SoC) integrated circuit design*."  (*See* Malloy Decl. Ex. B at 13; *id.* at 82.)  As

the examiner noted, the prior art already disclosed sequencers capable of performing similar

functions.  (*See id.* at 24, 26.)  Mila cannot show that its reliance on the SoC limitation in the

preamble was unnecessary to distinguish the prior art.

### B.     "the status information consisting of…"

Mila fails to overcome the "strong presumption" that "consisting of" excludes unrecited

elements.  *Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350,

1358-59 (Fed. Cir. 2016).  The claim language and prosecution history confirm that "status

information" is limited to the recited elements.

Mila's reliance on *Amgen Inc. v. Amneal Pharmaceuticals LLC*, 945 F.3d 1368 (Fed. Cir. 2020) is misplaced.  (Resp. at 30.)  *Amgen* addressed a narrow circumstance: a claim that used the open transition "comprising" in the preamble and then recited "at least one" component "selected from the group consisting of" listed alternatives.  *Id.* at 1371, 1376-79.  In that setting, the Federal Circuit held that the use of "consisting of" to define a group from which at least one element must be selected (i.e., a "Markush group") did not preclude the presence of additional elements outside that Markush group.  *Id.* at 1378-79.  The court's ruling was limited to that specific claim structure.  *See id.* at 1379 ("[T]his case involves a claim that uses a 'comprising' transition phrase and one of the following limitations requires a component that 'consists of' items listed in a Markush group . . . .").  Courts have recognized that "*Amgen* did not change the well-understood rules of patent interpretation." *TherapeuticsMD, Inc. v. Teva Pharms. USA, Inc.*, No. 2:20-CV-03485 (BRM) (SDA), 2026 WL 63493, at *12 (D.N.J. Jan. 8, 2026).

By contrast, the claim here does not recite that "status information" consists of items selected from a Markush group.  *See id.* at *12-*13 (distinguishing *Amgen* on this basis and construing "solvent system" in a claim to an "insert comprising" a "solvent system consisting of" recited elements as limited to the recited elements).  Rather, it recites "status information ***consisting of***" two types of information: (1) "available direct memory access (DMA) transfer channels" and (2) "others selected from the group consisting of" three specified types of SoC resource information.  That the second type of information is selectable from a Markush group does not open the broader "status information consisting of" limitation to additional types of information.  Otherwise, "consisting of" would collapse into "comprising," which is contrary to settled law.  *See CIAS, Inc. v. All. Gaming Corp*., 504 F.3d 1356, 1361 (Fed. Cir. 2007) ("For patent claims the distinction between 'comprising' and 'consisting' is established . . . ."); *see*

- 14 -

*also Digene Corp. v. Third Wave Techs., Inc.*, 323 F. App'x 902, 905 (Fed. Cir. 2009) (construing "wherein the HPV 52 DNA consists of all or a fragment of an HPV DNA" to exclude other DNA notwithstanding "comprising" in the preamble).

The prosecution history confirms NVIDIA's reading. Contrary to Mila's argument, the applicant did more than amend the claim to require DMA transfer channels. (Resp. at 31-32.) The applicant also amended it to specify that any "other" resources must be "selected from the group consisting of" the three recited categories. (Malloy Decl. Ex. B.) The amended claim therefore uses two closed transitional phrases to define "status information." That deliberate narrowing forecloses Mila's position that "additional types of 'status information'" remain within the claim scope. (Resp. at 29.) *See Multilayer Stretch*, 831 F.3d at 1359 ("prosecution history must unmistakably manifest an alternative meaning" to overcome presumption that "consisting of" denotes a closed group); *Azurity Pharms., Inc. v. Alkem Lab'ys Ltd.*, 133 F.4th 1359, 1367 (Fed. Cir. 2025) (finding disclaimer from addition of "consisting of" to the claims).

Mila is also wrong that limiting the claims to their recited elements would exclude a "preferred" embodiment. (Resp. at 31-32.) The specification passage cited by Mila sets forth the same four resource categories as the phrase at issue: processes running on the SoC, available storage memory, transfer channels, and available processing power. ('975 Patent at 5:50-57.)

C.    **"embedded processor"**

Mila's arguments against NVIDIA's proposed construction collapse two separately disclosed and claimed embodiments—an "embedded" processor and an "external" processor. Its assertion that the claims merely describe the same processor "from a different perspective" ignores the specification's consistent distinction between embedded and external processors. (*Compare, e.g.*, '975 Patent, 5:44-47 ("[T]he present invention advantageously allow[s] for selective control of functional units *within a single chip integrated circuit device* without burden

- 15 -

on the main *embedded processo*r."), *with* 2:35-39 ("*Another aspect* of the present invention features . . . an *external processor* to control the timing of operations of functional units[.]").)

The prosecution history reinforces the distinction between "embedded" and "external" processors.  The very first office action for the '975 Patent required the applicant to amend language depending from claim 1 to recite an "embedded processor" instead of merely a "processor."  (May 17, 2010 Office Action, at 4-5 (8,275,975 FH at 65-66).)  The examiner also required amendment of the independent method claim to recite "said external processor" instead of "said processor."  (*Id.*)  Neither amendment reflects either the examiner's or applicant's view that "embedded" and "external" described the same processor.

Neither Mila nor Dr. Brogioli supports their characterization of exemplary processors in the specification ("ARM based processor, Tensilica, MIPS, X86, PowerPC") as necessarily being off-chip.  (Resp. at 33.)   That characterization is implausible given the specification's emphasis on a "single chip integrated circuit device."  ('975 Patent at 3:29-39; 5:42-47.)

Finally, Mila's reliance on *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006), is misplaced.  In *Curtiss-Wright*, the patentee used minor variations of a term ("adjustable" and "adjustment mechanism") to describe the same type of limitation with overlapping subject matter.  *Id.*  But the '975 Patent uses "embedded" and "external" as contrasting modifiers to distinguish separate embodiments.  Allowing both terms to cover the same processor would collapse that distinction and render the modifiers superfluous.  *See id.* ("[C]laim differentiation takes on relevance in the context of a claim construction that would render additional, or different, language in another independent claim superfluous.").

### D.     "third hardware functional unit"

Mila concedes that this term lacks antecedent basis by asking the Court to rewrite the claim to correct it.  (Resp. at 34-35.)  Courts may correct "minor typographical and clerical

errors" only if the correction is "evident from the face of the patent," "not subject to reasonable debate," and "the prosecution history does not suggest a different interpretation of the claims." *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1356-57 (Fed. Cir. 2003).

Mila fails to meet this burden. The error here is not minor. Mila's proposed correction requires adding to claim 5 the limitations recited in claims 3 and 4—a huge change in scope.

Nor is Mila's correction apparent on the face of the patent or free from reasonable debate. A claim is "not amenable to correction" when "other possible corrections appear to be feasible." *Trusted Knight Corp. v. Int'l Bus. Machines Corp.*, 681 F. App'x 898, 904 (Fed. Cir. 2017) (affirming indefiniteness where multiple corrections with different claim scope appeared feasible). Another possible correction would be to delete the word "third" from claim 5.

Rather than resolve the claim's ambiguity, Mila's correction would introduce uncertainty. Mila assumes without basis that claim 5 was intended to cover a design with three functional units, each in a unique category. But the specification discloses no embodiment having just the three recited functional units. ('975 Patent at 3:45-5:14; Subramanian Decl. ¶ 86.)

Moreover, Mila compounds this ambiguity by citing an embodiment describing four categories of functional units as support for its correction but ignoring the fourth category. (Resp. at 35 (citing '975 Patent at 4:1-14, 4:25-34).) The error is highlighted by Mila's silence as to claim 6, which also depends from claim 1 and recites a "fourth hardware functional unit." Courts reject such attempts to correct dependency where the correction is neither "obvious" nor "subject to reasonable debate" without "assist[ance] by a 'patent whisperer.'" *See Gilead Scis., Inc. v. Watson Lab'ys, Inc.*, No. CV 15-2350 (RMB/JS), 2016 WL 1690306, at *3 (D.N.J. Apr. 26, 2016). Mila's correction would not fix the error in the claims and would instead inject new ambiguity by omitting claim 6 from the chain of dependency. Thus, this term is indefinite.

Dated: May 20, 2026                    MORRISON & FOERSTER LLP

                                       By: */s/ Brian C. Nash*
                                       Brian C. Nash (TX Bar No. 24051103)
                                       MORRISON & FOERSTER LLP
                                       300 Colorado Street, Suite 1800
                                       Austin, TX 78701
                                       Tel.: (512) 617-0654
                                       BNash@mofo.com

                                       Daralyn J. Durie (CA Bar No. 169825)
                                       MORRISON & FOERSTER LLP
                                       425 Market Street
                                       San Francisco, CA 94105-2482
                                       Tel.: (415) 268-7000
                                       Fax: (415) 268-7522
                                       DDurie@mofo.com

                                       Matthew R. Stephens (TX Bar No. 24129261)
                                       MORRISON & FOERSTER LLP
                                       12531 High Bluff Drive, Suite 100
                                       San Diego, CA 92130
                                       Tel.: (858) 720-5100
                                       Fax: (858) 720-5125
                                       MStephens@mofo.com

                                       Ryan Malloy (CA Bar No. 253512)
                                       MORRISON & FOERSTER LLP
                                       707 Wilshire Boulevard
                                       Los Angeles, CA 90017
                                       Tel.: (213) 892-5200
                                       RMalloy@mofo.com

                                       James F. Mack (CA Bar No. 322056)
                                       MORRISON & FOERSTER LLP
                                       755 Page Mill Road
                                       Palo Alto, CA 94304-1018
                                       Tel.: (650) 813-5600
                                       JMack@mofo.com

                                       Abed R. Balbaky (NY Bar No. 5844873)
                                       MORRISON & FOERSTER LLP
                                       250 West 55th Street
                                       New York, NY 10019
                                       Tel.: (212) 468-8000
                                       ABalbaky@mofo.com

- 19 -

*Counsel for Defendant*
*NVIDIA CORPORATION*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on May 20, 2026, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

_/s/ Brian C. Nash_
Brian C. Nash