**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| MILA US INC,<br><br>     Plaintiff,<br>  v.<br><br>NVIDIA CORPORATION,<br><br>     Defendant. | Case No.  1:25-cv-01359-ADA<br><br>**JURY TRIAL DEMANDED** |

<u>**PLAINTIFF'S SUR-REPLY CLAIM CONSTRUCTION BRIEF**</u>

**TABLE OF CONTENTS**

I.    U.S. PATENT NO. 7,805,578 ........................................................................... 1

    A.    The term "memory interface block" is not subject to § 112 ¶ 6. ................................. 1

    B.    Even if § 112 ¶6 applies, the term "memory interface block" is not indefinite............ 2

II.   U.S. PATENT NO. 7,924,296 ........................................................................... 3

    A.    NVIDIA concedes that "wherein the plurality of image tiles are generated…" does not impose a strict temporal requirement. ............................................................ 3

III.  U.S. PATENT NO. 7,966,436 ........................................................................... 5

    A.    The preamble of claim 1 is not limiting................................................................... 5

    B.    "Setting data" and "device data" are not indefinite. ....................................................... 8

    C.    "Low-Speed Transmission Unit".................................................................................. 10

        i.    The term does not invoke § 112 ¶ 6. ....................................................... 10

        ii.   Even under § 112 ¶ 6, the term is not indefinite................................................. 12

IV.   U.S. PATENT NO. 8,151,136 ........................................................................... 13

    A.    The preamble of claim 9 is not limiting................................................................... 13

    B.    The preamble of claim 20 is not limiting................................................................. 14

V.    U.S. PATENT NO. 8,275,975 ........................................................................... 15

    A.    The preamble of claim 1 is not limiting................................................................... 15

    B.    "The status information consisting of …" does not exclude other categories............. 15

    C.    The "embedded processor" need not be on an SoC.................................................... 16

**TABLE OF AUTHORITIES**

**Cases**

*Amgen Inc. v. Amneal Pharms. LLC,*
   945 F.3d 1368 (Fed. Cir. 2020) .................................................................................. 16

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.,*
   672 F.3d 1335 (Fed. Cir. 2012) .................................................................................... 8

*Bancorp Servs., LLC v. Hartford Life Ins. Co.,*
   359 F.3d 1367 (Fed. Cir. 2004) .................................................................................... 9

*Blackboard, Inc. v. Desire2Learn, Inc.,*
   574 F.3d 1371 (Fed. Cir. 2009) .................................................................................... 1

*Cochlear Bone Anchored Sols. AB v. Oticon Med. AB,*
   958 F.3d 1348 (Fed. Cir. 2020) ............................................................................. 6, 14

*Dyfan, LLC v. Target Corp.,*
   28 F.4th 1360 (Fed. Cir. 2022) ................................................................................. 1, 2

*Enzo Biochem, Inc. v. Applera Corp.,*
   599 F.3d 1325 (Fed. Cir. 2010) .................................................................................... 8

*Evolved Wireless, LLC v. Apple, Inc.,*
   No. 15-CV-542-SLR, 2016 WL 6693072 (D. Del. Nov. 14, 2016) ......................... 11

*Free Stream Media Corp. v. Alphonso Inc.,*
   No. 2:15-cv-1725-RWS, 2017 WL 1165578 (E.D. Tex. Mar. 28, 2023), *aff'd,*
   996 F.3d 1355 (Fed. Cir. 2021) .................................................................................. 12

*Galderma Labs., L.P. v. Amneal Pharms. LLC,*
   806 F. App'x 1007 (Fed. Cir. 2020) ............................................................................ 5

*Georgetown Rail Equip. Co. v. Holland L.P.,*
   867 F.3d 1229 (Fed. Cir. 2017) .................................................................................... 6

*Huawei Techs. Co. v. Verizon Commc'ns, Inc.,*
   No. 2:20-CV-30-JRG, 2021 WL 150442 (E.D. Tex. Jan. 15, 2021) ........................ 11

*Marrin v. Griffin,*
   599 F.3d 1290 (Fed. Cir. 2010) .................................................................................. 15

*Nautilus, Inc. v. Biosig Instrus., Inc.,*
   572 U.S. 898 (2014) ...................................................................................................... 8

*OnPoint Sys., LLC v. Protect Animals with Satellites, LLC*,
   No. 4:20-CV-657-ALM, 2022 WL 1612070 (E.D. Tex. May 20, 2022) ........................... 10, 11

*Panasonic Corp. v. Magna Intl Inc.*,
   No. 6:21-CV-319-ADA, 2022 WL 625089 (W.D. Tex. Mar. 3, 2022).................................... 13

*Proveris Sci. Corp. v. Innovasys., Inc.*,
   739 F.3d 1367 (Fed. Cir. 2014)........................................................................................... 7

*Sonrai Memory Ltd. v. Oracle Corp.*,
   No. 1:22-CV-94-LY, 2022 WL 800730 (W.D. Tex. Mar. 16, 2022) ......................................... 1

*TEK Glob., SRL v. Sealant Sys. Int'l, Inc.*,
   920 F.3d 777 (Fed. Cir. 2019)............................................................................................... 1

*ThroughPuter, Inc. v. Amazon Web Servs., Inc.*,
   No. 1:22-CV-1095-DAE, 2025 WL 2946606 (W.D. Tex. Sept. 9, 2025).................................. 2

*TrackThings LLC v. Amazon.com, Inc.*,
   No. 6:21-CV-720-ADA, 2022 WL 2135009 (W.D. Tex. June 14, 2022) ................................ 10

*VDPP LLC v. Vizio, Inc.*,
   No. 2021-2040, 2022 WL 885771 (Fed. Cir. Mar. 25, 2022)...................................................... 3

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007)........................................................................................... 7, 15

*Visible Connections, LLC v. Zoho Corp.*,
   418 F. Supp. 3d 155 (W.D. Tex. 2019) (Pitman, J.)...................................................... 6, 13, 15

*WSOU Investments LLC v. Google LLC*,
   No. 2022-1063, 2023 WL 6889033 (Fed. Cir. Oct. 19, 2023)................................................ 12

iii

I.    **U.S. PATENT NO. 7,805,578**

A.    **The term "memory interface block" is not subject to § 112 ¶ 6.**

Claim 14 does not use "means" and NVIDIA fails to overcome the presumption against § 112 ¶ 6.[1]  *See Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1365 (Fed. Cir. 2022).  NVIDIA argues examining the specification to inform the structural nature of a claim term is the wrong "test." Dkt. 43 ("Reply") at 1.  NVIDIA mischaracterizes Mila's position, which is that the claims connote sufficiently definite structure, as further evidenced by the specification.  Dkt. 41 ("Resp.") at 2-5.

NVIDIA's claim that "the test is not whether the specification discloses structure" is not accurate.  Reply at 1.  "To determine whether the claim limitation at issue connotes sufficiently definite structure to a person of ordinary skill in the art, we look first to intrinsic evidence …." *TEK Glob., SRL v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 785 (Fed. Cir. 2019).  "The intrinsic record comprises the claims, *the specification*, and the prosecution history." *Id.*[2]  The exercise for ascertaining whether "memory interface block" connotes sufficiently definite structure includes examining the '578 Patent specification (part of the "intrinsic record").  *See id.* at 785-87 ("Considering the specification next, we conclude that the … patent clearly contemplates a conduit having physical structure," holding that "'conduit' recites sufficiently definite structure."); *Sonrai Memory Ltd. v. Oracle Corp.*, No. 1:22-CV-94-LY, 2022 WL 800730, at *10 (W.D. Tex. Mar. 16, 2022) ("The specification further confirms that the 'logic for' terms do not invoke § 112, ¶ 6.").

A POSITA would understand "memory interface block" connotes structure based on claim 14's full context.  The claim details the connections (e.g., buses) and operations between the

---

[1] NVIDIA misplaces reliance on *Blackboard* because, there, the claim undisputedly recited four "means for" terms in "means-plus-function" format; the Court did not consider whether § 112 ¶ 6 applied.  Reply at 2; *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1382 (Fed. Cir. 2009).

[2] All emphases added unless stated otherwise.

"memory interface block," "memory," and "array controller" to connote definite structure. Dkt. 41-6 ("Brogioli Decl.") ¶¶ 27-36; *ThroughPuter, Inc. v. Amazon Web Servs., Inc.*, No. 1:22-CV-1095-DAE, 2025 WL 2946606, at *7 (W.D. Tex. Sept. 9, 2025) ("[s]tructure may … be provided by describing the claim limitation's operation, such as its input, output, or connections.").

The specification reinforces that a POSITA would understand "memory interface block" as circuitry (hardware) that performs the claimed functionality. Resp. at 2-3; Brogioli Decl. ¶¶ 27-41; *see Dyfan*, 28 F.4th at 1366. NVIDIA argues that Mila identifies signals that "'turn[] the memory on and off,' without identifying a structure that generates them." Reply at 2. Not so. The patent teaches that "memory interface block 37" (a hardware block in Figure 2) provides structure "capable of generating … memory enable," "write enable," and "byte write enable" signals by, for example, setting bit values. Resp. at 5 (citing '578 Patent at 6:31-55). The patent also details how the "memory interface block" uses "at least one data bus" to transfer data to a plurality of memory locations, identifies those locations using a "lookup table," and employs "switching" to transfer data to those locations "substantially simultaneously." '578 Patent at 10:34-51.

NVIDIA's attempt to explain away the '578 Patent's teaching that the "'memory interface' may be formed as part of an 'integrated circuit'" ("IC") fails. Reply at 2. NVIDIA contends that "[b]ecause 'memory interface' is a different limitation, it cannot provide structure for 'memory interface block.'" *Id.* But claim 14 claims a "memory interface" comprising a "memory interface block." It follows that if a "memory interface" is part of an IC, a well-known structure, then the "memory interface block"—a ***component*** of the "memory interface"—is also part of that IC.

**B.     Even if § 112 ¶ 6 applies, the term "memory interface block" is not indefinite.**

Where, as here, NVIDIA fails to overcome the presumption that § 112 ¶ 6 does not apply, Mila "need not address whether, at step two, the specification[s] adequately disclose[s] structures

2

for those functions." *VDPP LLC v. Vizio, Inc.*, No. 2021-2040, 2022 WL 885771, at *3 (Fed. Cir. Mar. 25, 2022). Regardless, the '578 Patent clearly links the "memory interface block" with the recited functions and the Court should reject NVIDIA's indefiniteness arguments.

The specification links the "memory interface block 37" depicted in Figure 2 with the first function—transferring data received from an "array controller" to "a plurality of different memory locations … substantially simultaneously." Resp. at 6-7. For example, the '578 Patent specification teaches that the "memory interface block" receives broadcast data from the array controller via "broadcast bus 57" and "turn[s] all of the memories on at the same time (ME=1), put[s] all of the memories into write mode (WE=1) and enable[s] all of the inputs." '578 Patent at 10:34-11:3. The data transfer then occurs "by switching, so that … the 8 bit data from the [array controller] is switched onto both sets of memory bus lines … substantially simultaneously." *Id.* A POSITA would understand that using buses, signals, and switching for the claimed transfer links the function to "memory interface block" circuitry. Brogioli Decl. ¶¶ 37-41.

The specification also ties the second function—partially controlling memory to transfer data from one or more processing units—to "memory interface block" circuitry. Resp. at 7-8. NVIDIA incorrectly contends that the cited portions of the '578 Patent are entirely "functional" and "cannot provide the missing structure for the memory interface block." Reply at 3. The '578 Patent teaches that the "memory interface block" includes "control" capabilities, and utilizes "ME" and "WE" signaling to perform the claimed functionality. Brogioli Decl. ¶¶ 37-41.

## II.    U.S. PATENT NO. 7,924,296

### A.    NVIDIA concedes that "wherein the plurality of image tiles are generated…" does not impose a strict temporal requirement.

NVIDIA's originally proposed construction required tile generation "at the moment of" the fetching. Mila's responsive brief showed that the prosecution history and specification contradict

3

NVIDIA's construction. This intrinsic evidence prompted a change of course; NVIDIA's Reply states that it "agrees the limitation encompasses generation during or as part of fetching," and "also agrees that it encompasses a 'multi-step process.'" Reply at 4. NVIDIA thereby confirms that the term should be construed in accordance with its plain and ordinary meaning and that the intrinsic evidence provides no support for more narrow construction. The claim simply requires that "the plurality of image tiles are generated when the plurality of DMA channels perform the fetching."

Notwithstanding the forgoing, NVIDIA maintains that "the claims should be construed to exclude fetching pre-existing tiles." *Id*. NVIDIA's Opening Brief contradicts its proposal, arguing that "fetching cannot happen unless the image tiles exist." Dkt. 39 at 10 (also stating "the image tiles must exist in order to be fetched"). Thus, NVIDIA admits that tiles must exist, in some form, before fetching. NVIDIA's new proposed construction is, at best, duplicative of the express requirements of the claims and, at worst, confusingly introduces ambiguity regarding what it means to "exclude fetching pre-existing tiles." NVIDIA cannot dispute that the specification teaches tile generation and fetching as a multi-step process and admits the "intent of NVIDIA's original construction was not to preclude multi-step processes." Reply at 4. In short, NVIDIA fails to explain exactly what its revised construction requires beyond the plain and ordinary meaning. To the extent NVIDIA seeks a narrower construction, NVIDIA fails to identify any intrinsic evidence supporting that construction. Mila does not dispute that the plain and ordinary meaning requires a relationship between fetching and tile generation;[3] however, NVIDIA's reference to "pre-existing tiles" is ambiguous and would confuse the jury because the claim does not require a bright line distinguishing the timing between tile generation and fetching.

---

[3] For example, the parties agree that the plain meaning of "when" encompasses a temporal relationship that includes generation during or as part of the fetching process.

NVIDIA's arguments regarding the prosecution history also fail.  First, NVIDIA concedes that there is no prosecution disclaimer.  Reply at 4.  Instead, NVIDIA argues that it "uses the applicants' prosecution statements 'to inform claim construction.'"  *Id*. at 4-5.  But even applying NVIDIA's view to "inform claim construction," the prosecution history demonstrates a broader meaning of "when," and encompasses the situation where "the tiles should be generated prior to the DMA fetching operation."  Dkt. 39-2 at 23-24.  Therefore, if anything, the prosecution history informs the claim construction by reinforcing that the claims should not "exclude fetching pre-existing tiles," as NVIDIA argues.  Finally, NVIDIA's reliance on *American Piledriving* is unpersuasive.  Reply at 5.  *Galderma* explains why: "In *American Piledriving*, the claim language and specification compelled a particular construction and the statements made during prosecution merely served as additional support that 'remove[d] all doubt' about the correct construction" where "our court did not find that the examiner had clearly and expressly rejected the patentee's proposed construction."  *Galderma Labs., L.P. v. Amneal Pharms. LLC*, 806 F. App'x 1007, 1011 (Fed. Cir. 2020).  Here, the Examiner clearly and expressly rejected a rigid, narrow meaning of "when," and the specification does not support NVIDIA's construction.  *See* Resp. at 9-11.

## III.  U.S. PATENT NO. 7,966,436

### A.  The preamble of claim 1 is not limiting.

NVIDIA cannot justify making the preamble of claim 1 a required claim element.  Claim 1 recites a structurally complete "data transmitter"; the preamble only provides the invention's intended use.  This is true even in the face of NVIDIA's argument that the preamble provides necessary antecedent basis for the terms "data processor" and "display device."  Reply at 5-6. Several courts have found that where the preamble merely introduces a later term, that does not by itself mean it acts as a limitation on the claim.  Resp. at 12-13; *Visible Connections, LLC v. Zoho*

*Corp.*, 418 F. Supp. 3d 155, 161 (W.D. Tex. 2019) (Pitman, J.) ("While Zoho contends that the preamble term provides an antecedent basis for the term 'the application sharing' in the bodies of each claim, it does not explain how the preamble term illuminates the meaning of terms within the body of the claims or the context essential for understanding their meaning."). Rather, as is the case here, the body of claim 1 recites a structurally complete invention understandable irrespective of the preamble, including the terms "data processor" and "display device."

Regardless, NVIDIA fails to demonstrate that the ***entire*** preamble of claim 1 of the '436 Patent is limiting. *See Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*, 958 F.3d 1348, 1355 (Fed. Cir. 2020). Thus, even if "a data processor" and "a display device" in the preamble are limiting because they provide antecedent basis for those terms, that finding does not extend further—NVIDIA cannot justify importing the preamble's dispositional phrase ("disposed between") as a structural limitation because it is merely a statement of intended use. *See Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1236-37 (Fed. Cir. 2017) (preamble not limiting where "the term 'mounted on a vehicle for movement along the railroad track' is meant to describe the principal intended use of the invention but not to import a structural limitation or to exclude from the reach of the claims an assembly that does not include a vehicle mount").

NVIDIA argues that this portion of the preamble recites an "essential arrangement of components set forth in the patent's Summary section." Reply at 7. NVIDIA's contention that Mila's supposed "omission of any discussion of the patent's Summary section is inconsistent with Federal Circuit law" is unsupported. *Id.* NVIDIA's sole support for some heightened importance of the Summary section is the *Proveris* case. There, the Federal Circuit explained that when "reading the patent as a whole, the inventors clearly relied on both the preamble and the body of claim 3 to define the claimed invention." *Proveris Sci. Corp. v. Innovasys., Inc.*, 739 F.3d 1367,

1373 (Fed. Cir. 2014).  While the Court cited the "Summary of Invention" as support for its conclusion, the Federal Circuit did not make any holdings regarding whether a patent's "Summary of Invention" is somehow determinative of whether a preamble is limiting.

The sole statement NVIDIA relies upon from the '436 Patent Summary is: "According to an aspect of the invention, there is provided a data transmitter disposed between a data processor and a display device."  Reply at 15 (quoting '436 Patent at 1:60-62).  This statement describes one potential use case of the invention. The Summary also notes that "[a]n advantage of some aspects of the invention is that it provides *a data transmitter* enabling rapid and efficient data transmission between a peripheral display device and a host processor," indicating the "data transmitter" enables *data transmission between* a processor and display, not that the "data transmitter" must be *disposed between* the processor and display.  '436 Patent at 1:48-52. Tellingly, the "Technical Field" portion of the specification states: "The *present invention* relates to … a data transmitter enabling a selective *data transmission* in two different modes *between* a data processor and a display device," with no indication the data transmitter must be *disposed between* a data processor and display device. *Id.* at 1:15-20. Considering the "disposed between" statement of use in the preamble as a structural claim limitation would improperly exclude preferred embodiments of the invention, particularly given the importance of "present invention" statements in evaluating claim scope. *Cf. Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007).

The differences between claims 1 and 10 also make clear "disposed between" is not a limitation on claim 1.  In its body, claim 10 recites "a data processor," "a display device," and "a data transmitter," and specifies the "data transmitter [is] disposed between the data processor and the display device." Because this structural arrangement is absent from claim 1's body, treating its preamble as fully limiting would ignore this drafting choice and collapse the differences between

7

the claims.  *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1347 (Fed. Cir. 2012).

NVIDIA's argument that claim 10 "adds a 'data receiver'" and, consequently, "required a different preamble" misses the mark.  Reply at 7.  Claim 10 requires a "data transmitter disposed between the data processor and the display device"—a limitation that is directed to the "data transmitter" and not the "data receiver."  That limitation highlights the patentee's decision to only direct claim 1 to the functionality of the "data transmitter" and exclude an express requirement regarding its positional relationship to other components that interact with it, such as "a data processor" and "a display device."  The Court should not re-draft claim 1 to import a positional requirement when the patentee made a deliberate decision not to include it.

### B.    "Setting data" and "device data" are not indefinite.

NVIDIA fails to demonstrate indefiniteness.  NVIDIA complains Mila "fails to provide a reasonably certain meaning for these terms," but that is not the test.  Reply at 7.  The proper test asks whether the claim "read in light of the specification delineating the patent, and the prosecution history, fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instrus., Inc.*, 572 U.S. 898, 898-99 (2014).[4]  The patent teaches "setting data" and "device data" with reasonable certainty.

The claim distinguishes "primary data" transmitted in "high-speed mode" and "secondary data" transmitted in "low-speed" mode.  Claim 1 is clear: "setting data" is part of the "primary data," packetized by "the setting data relay," and transmitted in "high-speed mode;" whereas "device data" is part of "secondary data" transmitted in "low-speed transmission mode."  The

---

[4] NVIDIA argues for an "objective boundary" distinguishing "setting data" and "device data." Neither party contends these terms are "words of degree"; the test for indefiniteness thus requires no "objective boundary," but requires the term be taught with "reasonable certainty." *See Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010).

specification reinforces this framework, detailing the nature of each data type, teaching that "setting data is information required for outputting the image data … as an image on the display device," such as "light and darkness, brightness, gamma correction index, horizontal and vertical positions of a picture, and resolution." '436 Patent at 8:40-52.  Because "setting data" impacts the output of an image by a display device, it is transmitted in the "high-speed mode" with the image data.  *Id.* at 9:40-49.  In contrast, the "device data," often discussed as "device control data" in the specification, encompasses data for "controlling an operation of the display device," such as "synchronization information, reset information, and low-power driving information."  *Id.* at 5:5-15.  Unlike "setting data," "device data" relates to the control features of the display device itself.[5]

Given the different uses of these data types, the patent addresses problems in the prior art by transmitting "setting data" (with "image data") in high-speed mode, and transmitting "device data" in "low-speed mode."  In the prior art, transmitting all of this data in the same mode resulted in "a flickering phenomenon."  *Id.* at 5:50-55.  By contrast, the inventive "data transmitter … can time divisionally transmit data in different modes depending on the data, thereby outputting an image without interruption."  *Id.* at 5:55-59. The '436 Patent's functional definitions and concrete examples for each category teach the terms with reasonable certainty—"setting data" references non-image data used in the display of the image and is transmitted in high-speed mode; "device data" is data used to control the display device and is transmitted in low-speed mode.[6]

Rather than address the categorical characterizations distinguishing these two data

---

[5] NVIDIA complains that there is no express definition of "device data" (Reply at 8), but there is no such requirement.  *Bancorp Servs., LLC v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004) ("The failure to define the term is, of course, not fatal, for if the meaning of the term is fairly inferable from the patent, an express definition is not necessary.").  A POSITA understands "device data" corresponds to "device control data" and, if necessary, may be construed as such.

[6] NVIDIA is therefore incorrect that Mila is "treating the terms [setting data and device data] as labels for any data transmitted at the claimed speeds." *See* Reply at 8.

categories, NVIDIA complains that the '436 Patent teaches overlapping *examples* of "setting data" and "device data," *such as* "image brightness." Reply at 8. There is nothing inconsistent or contradictory about using "image brightness" as "setting data" for the output of a particular "image" and, separately, using "device control data" to control the "brightness" of the display device. The fact that data regarding image "brightness" can be primary or secondary data reflects flexibility in the invention's implementation, not indefiniteness. The '436 Patent embraces these implementation-based decisions, teaching that "data can be divided in advance into the primary data and the secondary data ***depending on natures and types of the data***." '436 Patent at 5:43-46.

### C. "Low-Speed Transmission Unit"

#### i. The term does not invoke § 112 ¶ 6.

Claim 1 of the '436 Patent does not use the word "means" and NVIDIA fails to overcome the presumption that § 112 ¶ 6 does not apply. First, "a POSITA would understand the claim language as a whole to connote structure sufficient for" performing the claimed functionality. *TrackThings LLC v. Amazon.com, Inc.*, No. 6:21-CV-720-ADA, 2022 WL 2135009, at *5 (W.D. Tex. June 14, 2022). Claim 1 recites a "data transmitter" comprising a "packetization unit," a "high-speed transmission unit," and a "low-speed transmission unit" and details the inputs, outputs, and connections between those structural components. *See OnPoint Sys., LLC v. Protect Animals with Satellites, LLC*, No. 4:20-CV-657-ALM, 2022 WL 1612070, at *22 (E.D. Tex. May 20, 2022) ("The context of the claim confirms the structural nature of the claimed 'positioning unit.' The claim specifies the objectives and operation of the 'positioning unit' by stating that it operates in conjunction with a memory, a processor unit, and a correction unit."). "Under Federal Circuit precedent, such claim recitation of how functionally-defined components interact to achieve a claim-recited objective provides sufficient indicia of structure to maintain the

10

presumption against § 112, ¶ 6." *Huawei Techs. Co. v. Verizon Commc'ns, Inc.*, No. 2:20-CV-30-JRG, 2021 WL 150442, at *12 (E.D. Tex. Jan. 15, 2021); *see also, e.g.*, *Evolved Wireless, LLC v. Apple, Inc.*, No. 15-CV-542-SLR, 2016 WL 6693072, at *7 (D. Del. Nov. 14, 2016) (holding "[s]ection 112, ¶ 6 does not apply" to "transmission unit configured to transmit" term).[7]

The specification reinforces "low-speed transmission unit" connotes sufficiently definite structure to a POSITA.  NVIDIA contends Mila fails to "articulate something for that structure." Reply at 9.  To the contrary, like the claim itself, Figure 3a teaches the "low-speed transmission unit" as discrete hardware (element 320) with defined inputs, outputs, and bidirectional data paths. *OnPoint*, 2022 WL 1612070, at *23 (rejecting that "positioning unit" is subject to § 112 ¶ 6 where a POSITA "would understand that devices like the one illustrated in Figure 2, and recited in the claims, would have sufficiently definite meaning as the name for a structure").  The patent explains how the "low-speed transmission unit" utilizes a 1.2V swing level and different frequency than the "high-speed transmission unit," and can "transmit and receive a low-speed and low-power signal through the electrical connection (lanes)."  '436 Patent at 6:13-7:4.  These teachings inform a POSITA that "low-speed transmission unit" refers to circuitry.  Brogioli Decl. ¶¶ 67-74.

Notably, NVIDIA's failure to contend "packetization *unit*" and "high-speed *transmission unit*" are non-structural terms counsels against application of § 112 ¶ 6 to "low-speed *transmission unit*." NVIDIA offers no explanation for its choice to target "low-speed transmission unit" and not the others, beyond blaming the 12-term briefing limit.  "The simple answer is that all of the '[unit]' terms when read in light of the remaining claim language, specification, prosecution history, and relevant extrinsic evidence, have sufficiently definite structure to a person of ordinary skill in the

---

[7] Mila's cited cases address the term "unit"—more specifically, a "transmission unit"—which is unlike NVIDIA's reliance on a case regarding the use of the term "module."  Reply at 9.

11

art." *Free Stream Media Corp. v. Alphonso Inc.*, No. 2:15-cv-1725-RWS, 2017 WL 1165578, at *21 (E.D. Tex. Mar. 28, 2023) (cleaned up) (finding defendant's failure to allege that the term "pairing server" invoked § 112 ¶ 6 "further confirmed" that other "server" terms did not invoke § 112 ¶ 6), *aff'd*, 996 F.3d 1355 (Fed. Cir. 2021). Put differently, a POSITA would understand that "packetization unit," "high-speed transmission unit," and "low-speed transmission unit" each recites a structural component, at least in part because the claim language operatively couples these components. *WSOU Investments LLC v. Google LLC*, No. 2022-1063, 2023 WL 6889033, at *4 (Fed. Cir. Oct. 19, 2023) (reversing finding that 112 ¶ 6 applied because "a person of ordinary skill in the art reading the claim in light of the specification would understand that the recited computer program code is stored in a memory structure and running on the processor").

### ii.    Even under § 112 ¶ 6, the term is not indefinite.

NVIDIA cannot meet its burden to demonstrate that "low-speed transmission unit" is a means-plus-function term.  Even if § 112 ¶ 6 applies, NVIDIA cannot demonstrate indefiniteness because the '436 Patent discloses structure corresponding to the "low-speed transmission unit."

The patent identifies "low-speed transmission unit 320" as circuitry that performs the claimed functions.  Claim 1 recites a "low-speed transmission unit" configured to "relay and transmit secondary data" "in a low-speed mode."  NVIDIA's expert acknowledges the patent's teachings that "data is converted from digital to analog using a clock signal," which refers to "a digital-to-analog converter."  Dkt. 39-4 ¶ 82.  NVIDIA nonetheless argues "it is irrelevant that NVIDIA's expert would know how to design a [low]-speed transmitter, as the sole question is what the specification discloses."  Reply at 10.  NVIDIA's expert cites to the '436 Patent at 6:35-47 as support for his understanding that converting digital data to analog signals requires circuitry—meaning its expert conceded circuitry for accomplishing the relay and transmission of

12

secondary data is rooted in the '436 Patent teachings.[8]  Dkt. 39-4 ¶ 82.

Moreover, NVIDIA is wrong that "Mila and Dr. Brogioli identify no structure for the receiving function"—the second claimed function.  Reply at 10.  Claim 1 recites that the low-speed transmission unit receives "backward data" from a "display device" in "low-speed mode."  Figure 3a depicts the "low-speed transmission unit 320" as a hardware block with a unidirectional arrow as an input for receiving "backward data."  The patent teaches that the data transmitter may be "electrically connected" to the display device "through a PCB (printed circuit board), a flex-foil, or a cable" to "transmit and *receive* a low-speed and low-power signal through the electrical connection."  '436 Patent at 6:53-60; *see id.* at 2:32-37.  These teachings clearly link the "low-speed transmission unit 320" of Figure 3a with the claimed functionality.[9]

## IV.    U.S. PATENT NO. 8,151,136

### A.    The preamble of claim 9 is not limiting.

NVIDIA cannot justify converting the preamble into a claim limitation.  Claim 9's body recites a structurally complete "main processor" with all components and functionality for practicing the invention.  Because the claim itself is directed to the "main processor," the introduction of the "main processor" does not render the preamble limiting.  *See Panasonic Corp. v. Magna Intl Inc.*, No. 6:21-CV-319-ADA, 2022 WL 625089, at *18 (W.D. Tex. Mar. 3, 2022).

Nor does the preamble's reference to an "application processor" provide necessary antecedent basis.  *See Visible Connections*, 418 F. Supp. 3d at 161.  The body of claim 9 only

---

[8] NVIDIA takes issue with the fact that the specification does not expressly refer to "analog circuitry."  Reply at 10.  NVIDIA ignores that the '436 Patent teaches converting digital data and analog signals and describes the use of "AD converter[s]" to do so.  '436 Patent at 7:10-17. NVIDIA's expert understands that the use of "analog circuitry" follows from those teachings.

[9] NVIDIA's argument that "lanes are not structure of the transmission unit, but rather the inputs and outputs" supports Mila's position, by highlighting that the "low-speed transmission unit" contains structural inputs and outputs.  Reply at 10.

references an "application processor" in connection with "two or more ports" of a "shared memory"—the claim recites a "shared memory" with "two or more ports," "and one of the ports is … *assigned* to the application processor." Thus, the claim requires that a "port" be "assigned" to an "application processor" and "application processor" need not be an additional limitation.

Even if the preamble provides necessary antecedent basis for "main processor" and "application processor," NVIDIA cannot justify treating the entire preamble as limiting—that the "main processor" be "coupled" to an "application processor" and "control[] an operation of the application processor." *Cochlear*, 958 F.3d at 1355. NVIDIA contends a "key aspect of the invention is that 'the main processor sends the application processor bootup control commands instead of boot code.'" Reply at 11. But the cited aspects of the patent merely explain that, in some embodiments, the "main processor" can "send" "control commands" to an "application processor." This does not warrant limiting the preamble to require (1) a positional relationship between the processors or (2) that the "main processor" "controls the application processor."[10]

## B.    The preamble of claim 20 is not limiting.

NVIDIA cannot justify importing the entire preamble, even if it provides antecedent basis for "main processor." The phrase "[a] code data error correcting method by a main processor included in a digital processing device …" only indicates an intended use for performing the claimed method. The part of the specification NVIDIA cites reinforces that the invention concerns the "method" for "correcting a code data error"; it does not specify that method be performed by the "main processor," as NVIDIA argues. Reply at 12. Likewise, the Summary notes "the *present invention provides a method* … for correcting a code data error"; it does not require performance

---

[10] The preamble recites "controlling *an operation* of the application processor," not complete "control" of the "application processor," as NVIDIA apparently advocates.

of the method by "a main processor." '136 Patent at 3:53-4:7; *cf. Verizon*, 503 F.3d at 1308.

## V.    U.S. PATENT NO. 8,275,975[11]

### A.    The preamble of claim 1 is not limiting.

NVIDIA's arguments for limiting the preamble of claim 1 fail.  Like the preamble in *Marrin*, the preamble of claim 1 merely states the intended purpose of the claimed "sequencer controlled system."  *Compare Marrin v. Griffin*, 599 F.3d 1290, 1292 (Fed. Cir. 2010) (preamble reciting "scratch-off label *for* permitting a user to write thereon without the use of a marking implement") *with* '975 Patent at claim 1 (preamble reciting "sequencer controlled system *for* a system-on-chip (SoC) integrated circuit design").  Claim 1's body recites a structurally complete "sequencer controlled system," meaning that the preamble does <u>not</u> provide necessary antecedent basis for "SoC" because neither the use of SoC in the preamble nor in the body refers to a necessary component of the claimed invention.  *See Visible Connections*, 418 F. Supp. 3d at 161.

NVIDIA's arguments regarding the specification and prosecution history likewise fail and should be rejected.  The language NVIDIA cites from the specification conveys an intended purpose for the "system"—controlling aspects of "an SOC *environment*…."  *See* Reply at 13.  The prosecution history quoted by NVIDIA similarly emphasizes the context of the invention, not structure—that is, the *sequencer* was the operative distinguishing feature, not the SoC environment referenced in the preamble.  NVIDIA points to nothing in the prosecution history as purportedly rising to "clear reliance on the [SoC]" in the "preamble during prosecution to distinguish the prior art" necessitating "render[ing] the preamble a claim limitation."  *See Marrin*, 599 F.3d at 1294.

### B.    "The status information consisting of …" does not exclude other categories.

NVIDIA recognizes *Amgen* applies where "a claim … uses a 'comprising' transition phrase

---

[11] To streamline the issues, Mila will not further assert claim 5 of the '975 Patent in this case.

and one of the following limitations requires a component that 'consists of' items listed in a Markush group…."  Reply at 14 (quoting *Amgen Inc. v. Amneal Pharms. LLC*, 945 F.3d 1368, 1379 (Fed. Cir. 2020)).  The claims here recite a "sequencer controlled system … comprising" and a "method … comprising," followed by a limitation requiring "status information consisting of … and others selected from the group consisting of …"; they have the same structure as those in *Amgen*.  NVIDIA cites no authority that addition of a second "consisting of" phrase before the Markush group renders the holding in *Amgen* inapplicable.  The use of Markush language in conjunction with "comprising" indicates status information other than what the claim lists is permitted, so long as status information includes "available direct memory access (DMA) transfer channels" and at least one of the other types of status information listed in the group.

The '975 Patent's teachings also undermine NVIDIA's arguments.  The patent includes a system embodiment with up to 32 resources, meaning the patent envisions systems that track more than 4 resources.  *See* Resp. at 31.  In connection with that embodiment, the patent explains: "The resource refers to numeric values which represent processes running on the SoC chip, the available storage memory, the transfer channels, the available processing power, ***or any other processes for the SoC chip***."  '975 Patent at 5:50-57.  The "or any other" language refutes a closed construction by contemplating "status information" may exist for "other processes."

NVIDIA's prosecution history arguments likewise fail.  NVIDIA contends the applicant amended the claim "to specify that any 'other' resources ***must be*** 'selected from the group consisting of' the ***three*** recited categories."  Reply at 15.  NVIDIA fails to specifically identify where the patent applicant made any such assertions, instead citing its entire prosecution history excerpt exhibit.  *See id.*  No such statements appear anywhere in that exhibit.  *See* Dkt. 39-3.

C.    **The "embedded processor" need not be on an SoC.**

16

NVIDIA's argument that an SoC must include the "embedded processor" to avoid "collaps[ing] two separately disclosed and claimed embodiments" fails. Reply at 15. As discussed above, "SoC" is not a required element of the claimed system. But even if it is, NVIDIA ignores that the specification describes embodiments where the "processor" ("embedded" or "external") is placed outside any system-on-chip (the opposite of NVIDIA's construction).[12]  '975 Patent at 2:53-55 (FIG. 1 "show[s] a *general system view of ... the SOC design*"), Fig. 1 (showing no "embedded processor"); *id.* at 2:57-60, 3:34-37 ("FIG. 2 is a block diagram of a system for sequencing functional units," "[s]equencer 110 is designed to relieve the embedded processor 200, as shown in FIG. 2"), Fig. 2 (showing the "embedded processor 200" as a separate block from the rest of the "sequencer controlled system 100").[13]  Mila's understanding does not "render the modifiers superfluous," as NVIDIA suggests.  Reply at 16.  Claim 1 requires a processor "embedded" in the claimed "sequencer controlled system"—not necessarily on an SoC.  Resp. at 33; '975 Patent at 3:29-33.  Claim 18's "external processor" requires a "processor" "external" to the "sequencer," which could either be embedded in the same system or outside of it.

NVIDIA's prosecution history argument also fails.  The Examiner required antecedent basis clarifications by changing (1) "the processor" to "the embedded processor" in a claim *depending* from a claim reciting "an embedded processor," and (2) "said processor" to "said external processor" because the antecedent basis earlier *in the same claim* recited "an external processor."  Ex. 5 at 15, 18-19, 25-26.  Both changes addressed form, not substance.

---

[12] NVIDIA incorrectly characterizes the specification as "consistent[ly] distin[guishing] between embedded and external processors."  Reply at 15.  The specification mentions "external processor" only once in a manner consistent with the "embedded processor."  *See* '975 Patent at 2:35-45.

[13] NVIDIA's quoted specification language reflects that the functional units—*not* the embedded processor—may reside on the same "single chip integrated circuit device."  *See* Reply at 15 (the "invention … allow[s] for … control of *functional units within a single chip integrated circuit device* without burden on the … embedded processor") (quoting '975 Patent at 5:44-47).

Dated:  June 4, 2026

Respectfully submitted,

*/s/ Brett E. Cooper*
Brett E. Cooper (NY SBN 4011011)
bcooper@bclgpc.com
Seth Hasenour (TX Bar No. 24059910)
shasenour@bclgpc.com
Jonathan Yim (NY SBN 5324967)
jyim@bclgpc.com
Drew B. Hollander (NY SBN 5378096)
dhollander@bclgpc.com
Scott Kolassa (NY SBN 4308409)
skolassa@bclgpc.com
Amy E. Hayden (CA SBN 287026)
ahayden@bclgpc.com
**BC LAW GROUP, P.C.**
200 Madison Avenue, 24th Floor
New York, NY 10016
Tel: (212) 951-0100

***Counsel for Plaintiff***
***MILA US INC***

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2026, a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF Electronic Filing System.

*/s/ Brett Cooper*
Brett Cooper

18