**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| MILA US INC,<br><br>Plaintiff<br><br>v.<br><br>NVIDIA CORPORATION,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 1:25-cv-01359-ADA<br><br>**JURY TRIAL DEMANDED** |

**NVIDIA CORPORATION'S FIRST AMENDED ANSWER AND COUNTERCLAIMS TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Defendant Nvidia Corporation hereby answers Plaintiff Mila US Inc's Amended Complaint (Dkt. 14). The headings and subheadings in Defendant's Answer are used solely for purposes of convenience and organization to mirror those appearing in the Complaint; to the extent that any headings or other non-numbered statements in the Amended Complaint contain or imply any allegations, Defendant denies each and every allegation therein. Except as expressly admitted, Defendant denies all allegations in the Amended Complaint.

## INTRODUCTION

1. This amended complaint arises from Nvidia's unlawful infringement of the following United States patents concerning improvements in image processing: United States Patent Nos. 7,924,296 ("the '296 Patent"), 7,805,578 ("the '578 Patent"), 7,757,048 ("the '048 Patent"), 8,275,975 ("the '975 Patent"), 7,966,436 ("the '436 Patent"), and 8,151,136 ("the '136 Patent") (collectively, the "Asserted Patents").

**ANSWER:** Defendant admits that the Amended Complaint purports to make a claim

for patent infringement of United States Patent Nos. 7,924,296 (“the ’296 Patent”), 7,805,578 (“the ’578 Patent”), 7,757,048 (“the ’048 Patent”), 8,275,975 (“the ’975 Patent”), 7,966,436 (“the ’436 Patent”), and 8,151,136 (“the ’136 Patent”) (collectively, the “Asserted Patents”). Defendant denies all allegations of patent infringement. Defendant denies that the Asserted Patents concern improvements in image processing.

## PARTIES

2. Plaintiff Mila US Inc is a Texas corporation with its principal place of business at 6500 River Place Blvd, Building 7, Suite 250, Austin, Texas 78730. Mila is the sole owner by assignment of all right, title, and interest in the Asserted Patents, including the right to recover for past, present, and future infringement.

**ANSWER:** Defendant lacks information sufficient to form a belief as to the allegations of paragraph 2 of the Amended Complaint and therefore denies them on that basis.

3. Defendant Nvidia Corporation is a Delaware corporation with its principal place of business at 2701 San Tomas Expressway, Santa Clara, CA 95050. Nvidia is registered to do business in the State of Texas and may be served through its registered agent Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

**ANSWER:** Defendant admits that Defendant is a Delaware corporation with its principal place of business located at 2788 San Tomas Expressway, Santa Clara, CA 95051. Defendant denies that its principal place of business is located at 2701 San Tomas Expressway, Santa Clara, CA 95050. Defendant further admits that it is registered to do business in the State of Texas and may be served through its registered agent Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

4. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:** Defendant admits that Plaintiff purports to assert claims for patent infringement arising under 35 U.S.C. § 1, et seq., but denies all claims of infringement by Defendant. Defendant admits that the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Except as expressly admitted, Defendant denies the remaining allegations in Paragraph 4 of the Amended Complaint.

5. This Court has personal jurisdiction over Nvidia in this action because Nvidia has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Nvidia would not offend traditional notions of fair play and substantial justice. Nvidia maintains several places of business within the State of Texas, including at 11001 Lakeline Boulevard, Suite #100 Building 2, Austin, Texas 78717. Nvidia, directly and through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District by, among other things, making, using, offering to sell, and selling products that infringe the Asserted Patent. Nvidia is registered to do business in the State of Texas, and has appointed as its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701, for service of process.

**ANSWER:** Defendant admits that it uses, offers to sell, and sells products in the Western District of Texas. Defendant further admits it maintains a physical facility within this District at 11001 Lakeline Boulevard, Suite #100 Building 2, Austin, Texas 78717. Defendant

further admits that it maintains data centers within the State of Texas at 1100 Empire Central, Dallas, Texas 75247 and 7100 Metropolis Drive, Austin, Texas 78744. As stated in response to paragraph 3, Defendant further admits that it is registered to do business in the State of Texas and may be served through its registered agent Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701. The remaining statements of paragraph 5 of the Amended Complaint state legal conclusions to which no response is required. To the extent a response is required, Defendant is not contesting the exercise of personal jurisdiction for purposes of this action. Defendant denies all allegations of patent infringement.

6. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). Nvidia is registered to do business in Texas, and upon information and belief, Nvidia has transacted business in this District and has committed acts of direct and indirect infringement in this District by, among other things, making, using, offering to sell, selling, and importing products that infringe the Asserted Patents. Nvidia has regular and established places of business in this District, including at 11001 Lakeline Boulevard, Suite #100 Building 2, Austin, Texas 78717.

**ANSWER:** Paragraph 6 of the Amended Complaint states legal conclusions to which no response is required. To the extent a response is required, Defendant is not contesting the propriety of venue for purposes of this action, but denies that it is a convenient forum for the parties and witnesses. As stated in response to paragraph 3, Defendant admits that it is registered to do business in the State of Texas. Defendant admits that it has transacted business in this District and has used, offered to sell, and sold products in this District. Defendant denies all allegations of patent infringement. As stated in response to paragraph 5, Defendant further admits it maintains a physical facility within this District at 11001 Lakeline Boulevard, Suite

#100 Building 2, Austin, Texas 78717. Defendant denies that it maintains other places of business within the District.

**COUNT I**

**[ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 7,924,296**

7. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

**ANSWER:** Defendant incorporates by reference its responses to the foregoing paragraphs as though fully set forth herein.

8. Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 7,924,296, titled "System and method for DMA controlled image processing." The '296 Patent was duly and legally issued by the United States Patent and Trademark Office on April 12, 2011. A true and correct copy of the '296 Patent is attached as Exhibit 1.

**ANSWER:** Defendant admits that the '296 Patent is entitled "System and method for DMA controlled image processing," and was issued on April 12, 2011. Defendant admits that Exhibit 1 purports to be an uncertified copy of the '296 Patent. Paragraph 8 of the Amended Complaint otherwise states legal conclusions to which no response is required. To the extent a response is required, Defendant denies that the '296 Patent was duly and legally issued and lacks information sufficient to form a belief as to the remaining allegations of paragraph 8 of the Amended Complaint and therefore denies them on that basis.

9. On information and belief, Nvidia has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation the mobile processors and GPUs (*e.g.*, Pascal, Turing, Ampere and Ada architectures) with Multi-Plane

Overlay functionality (including but not limited to all GTX10 series, RTX20 series, RTX30 series, RTX40 series, RTX A series, GeForce, Quadro, and Tegra processors) ("Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '296 Patent. Identification of the Accused Products will be provided in Plaintiff's infringement contentions disclosed pursuant to the Court's scheduling order.

**ANSWER:** Defendant denies all allegations of patent infringement, whether literal or under the doctrine of equivalents. The remaining allegations in paragraph 9 pertain to case management, to which no response is required.

10. The Accused Products satisfy all claim limitations of one or more claims of the '296 Patent. A claim chart comparing exemplary independent claim 21 of the '296 Patent to representative Accused Products is attached as Exhibit 2.

**ANSWER:** Defendant denies the allegations of paragraph 10 of the Amended Complaint and Exhibit 2 attached thereto.

11. On December 3, 2024, Mila sent Nvidia a letter indicating that Nvidia's "various products infringe MILA patents," and identified the asserted '296, '578, '048, '975, '436, and '136 Patents. Exhibit 3 (Dec. 3, 2024 Notice Letter). Mila sent another letter on March 13, 2025 to Nvidia, which reiterated the points in the December 3 letter. *See* Exhibits 4-6 (March 13, 2025 Letters). On April 15, 2025, Nvidia responded to Mila, indicating that it "will investigate the intellectual property you have referenced." Exhibit 7 (April 15, 2025 Letter).

**ANSWER:** Defendant admits that Exhibits 3-7 purport to be copies of correspondence between Mila and Defendant. To the extent the allegations of paragraph 11 purport to quote from or characterize the contents of written documents, those documents speak for themselves. Defendant denies the remaining allegations in paragraph 11 of the Amended Complaint.

12. Nvidia knowingly and intentionally induces infringement of one or more claims of the ’296 Patent in violation of 35 U.S.C. § 271(b). As of December 3, 2024 (or at least as of the time of the filing and service of the original complaint), Nvidia has knowledge of the ’296 Patent and the infringing nature of the Accused Products. Despite this knowledge of the ’296 Patent, Nvidia continues to actively encourage and instruct its customers and end users (for example, through online instruction and other online publications cited in Exhibit 2) to use the Accused Products in ways that directly infringe the ’296 Patent. For example, Nvidia advertises that the Accused Products include “blending” among multiple display windows. *See* Exhibit 8 (Nvidia Tegra X1 Mobile Processor Technical Reference Manual v.1.3p) at 696-97. Nvidia also instructs its customers and end users on how to configure and use the Accused Products in an infringing manner, including through the use of the display controller and use of “[l]ayered blending among all windows.” *See id.* Nvidia provides these instructions and materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts. Nvidia also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the ’296 Patent, thereby specifically intending for and inducing its customers to infringe the ’296 Patent through the customers’ normal and customary use of the Accused Products.

**ANSWER:** Defendant denies the allegations of paragraph 12 of the Amended Complaint. Defendant further incorporates by reference paragraphs 74 and 75 of Defendant’s Defenses as though fully restated herein.

13. Nvidia has also infringed, and continues to infringe, one or more claims of the ’296 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed

in the ’296 Patent, are especially made or adapted to infringe the ’296 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use. As of December 3, 2024 (or at least as of the time of filing and service of the original complaint), Nvidia has knowledge of the ’296 Patent and the infringing nature of the Accused Products. Nvidia has been, and currently is, contributorily infringing the ’296 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f). For example, the identified hardware and/or software components and functionality in Nvidia’s mobile processors and GPUs products with Multi-Plane Overlay functionality constitute a material part of the inventions claimed in the ’296 Patent, are especially made or adapted to infringe the ’296 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence cited above and in Exhibit 2.

**ANSWER:** Defendant denies the allegations of paragraph 13 of the Amended Complaint. Defendant further incorporates by reference paragraphs 74 and 75 of Defendant’s Defenses as though fully restated herein.

14. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Nvidia has injured Plaintiff and is liable for infringement of the ’296 Patent pursuant to 35 U.S.C. § 271.

**ANSWER:** Defendant denies the allegations in paragraph 14 of the Amended Complaint.

15. On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, any predecessor assignees to the ’296 Patent, and any licensees did not make, offer for sale, or sell products that practice(d) the ’296 Patent during the relevant time period or were not required to mark during the relevant time period.

**ANSWER:** Paragraph 15 of the Amended Complaint states legal conclusions to which

no response is required. To the extent a response is required, Defendant lacks information sufficient to form a belief as to the allegations of paragraph 15 of the Amended Complaint and therefore denies them on that basis.

16. As described above, Nvidia obtained knowledge of Mila's patent portfolio and that certain Nvidia products infringe Mila's patents as of at least December 3, 2024, but has not ceased its infringing activities. Nvidia's infringement of the '296 Patent has been and continues to be willful and deliberate. Nvidia also has knowledge of the '296 Patent by way of the original complaint and, to the extent it does not cease its infringing activities, its infringement is and continues to be willful and deliberate.

**ANSWER:** Defendant denies the allegations in paragraph 16 of the Amended Complaint. Defendant further incorporates by reference paragraphs 87–89 of Defendant's Defenses as though fully restated herein.

17. As a result of Nvidia's direct and indirect infringement of the '296 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Nvidia's infringement, but in no event less than a reasonable royalty for the use made of the invention by Nvidia, together with interest and costs as fixed by the Court.

**ANSWER:** Defendant denies the allegations in paragraph 17 of the Amended Complaint.

## COUNT II

## [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 7,805,578

18. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

**ANSWER:** Defendant incorporates by reference its responses to the foregoing paragraphs as though fully set forth herein.

19. Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 7,805,578, titled "Data processor apparatus and memory interface." The '578 Patent was duly and legally issued by the United States Patent and Trademark Office on September 28, 2010. A true and correct copy of the '578 Patent is attached as Exhibit 9.

**ANSWER:** Defendant admits that the '578 Patent is entitled "Data processor apparatus and memory interface," and was issued on September 28, 2010. Defendant admits that Exhibit 9 purports to be an uncertified copy of the '578 Patent. Paragraph 19 of the Amended Complaint otherwise states legal conclusions to which no response is required. To the extent a response is required, Defendant denies that the '578 Patent was duly and legally issued and lacks information sufficient to form a belief as to the remaining allegations of paragraph 19 of the Amended Complaint and therefore denies them on that basis.

20. On information and belief, Nvidia has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation Nvidia's products based on and/or using "Tensor Core" Graphics Processing Unit ("GPU") architectures (such as Nvidia's "Hopper," and "Blackwell" GPUs, including at least the H200, H100, B100, and B200 Tensor Core GPUs, the DGX H100 the DGX H200) and Nvidia products with architectures that combine Central Processing Units ("CPUs") (such as Nvidia's "Grace" CPU) with NVIDIA GPUs (such as Nvidia's Grace Hopper and Grace Blackwell architectures, including at least the Nvidia GH200 Grace Hopper Superchip and the Nvidia GB200 Grace Blackwell Superchip) ("Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '578 Patent. Identification of the Accused Products will be provided in Plaintiff's infringement contentions disclosed pursuant to the Court's scheduling order.

**ANSWER:** Defendant denies all allegations of patent infringement, whether literal or under the doctrine of equivalents. The remaining allegations in paragraph 20 pertain to case management, to which no response is required.

21. The Accused Products satisfy all claim limitations of one or more claims of the ’578 Patent. A claim chart comparing exemplary independent claim 1 of the ’578 Patent to representative Accused Products is attached as Exhibit 10.

**ANSWER:** Defendant denies the allegations of paragraph 21 of the Amended Complaint and Exhibit 10 attached thereto.

22. On December 3, 2024, Mila sent Nvidia a letter indicating that Nvidia’s “various products infringe MILA patents,” and identified the asserted ’296, ’578, ’048, ’975, ’436, and ’136 Patents. Exhibit 3 (Dec. 3, 2024 Notice Letter). Mila sent another letter on March 13, 2025 to Nvidia, which reiterated the points in the December 3 letter. *See* Exhibits 4-6 (March 13, 2025 Letters). On April 15, 2025, Nvidia responded to Mila, indicating that it “will investigate the intellectual property you have referenced.” Exhibit 7 (April 15, 2025 Letter).

**ANSWER:** Defendant admits that Exhibits 3-7 purport to be copies of correspondence between Mila and Defendant. To the extent the allegations of paragraph 22 purport to quote from or characterize the contents of written documents, those documents speak for themselves. Defendant denies the remaining allegations in paragraph 22 of the Amended Complaint.

23. Nvidia knowingly and intentionally induces infringement of one or more claims of the ’578 Patent in violation of 35 U.S.C. § 271(b). As of December 3, 2024 (or at least as of the time of the filing and service of the original complaint), Nvidia has knowledge of the ’578 Patent and the infringing nature of the Accused Products. Despite this knowledge of the ’578 Patent, Nvidia continues to actively encourage and instruct its customers and end users (for

example, through online instruction and other online publications cited in Exhibit 10) to use the Accused Products in ways that directly infringe the '578 Patent. For example, Nvidia advertises that the Accused Products include the "Tensor Memory Accelerator (TMA)" and GigaThread thread Scheduler. *See* Exhibit 11 (https://developer.nvidia.com/blog/nvidia-hopper-architecture-in-depth/); Exhibit 12 (https://resources.nvidia.com/en-us-hopper-architecture/nvidia-h100-tensor-c) at 11; Exhibit 13 (https://www.nvidia.com/content/PDF/fermi_white_papers/NVIDIAFermiComputeArchitectureWhitepaper.pdf) at 18. In addition, Nvidia advertises the benefits of its NVLink/NVSwitch GPU functionality. *See* Exhibit 14 (https://resources.nvidia.com/en-us-dgx-systems/dgx-ai-4?ncid=no-ncid); Exhibit 12 (https://resources.nvidia.com/en-us-hopper-architecture/nvidia-h100-tensor-c?ncid=no-ncid) at 47. Nvidia also instructs its customers and end users on how to configure and use the Accused Products in an infringing manner, including through the use of the CUDA C++ programming guide. *See* Exhibit 15 (https://docs.nvidia.com/cuda/cuda-c-programming-guide/). Nvidia provides these instructions and materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts. Nvidia also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '578 Patent, thereby specifically intending for and inducing its customers to infringe the '578 Patent through the customers' normal and customary use of the Accused Products.

**ANSWER:** Defendant denies the allegations of paragraph 23 of the Amended Complaint. Defendant further incorporates by reference paragraphs 74 and 75 of Defendant's Defenses as though fully restated herein.

24. Nvidia has also infringed, and continues to infringe, one or more claims of the '578 Patent by selling, offering for sale, or importing into the United States, the Accused

Products, knowing that the Accused Products constitute a material part of the inventions claimed in the ’578 Patent, are especially made or adapted to infringe the ’578 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use. As of December 3, 2024 (or at least as of the time of filing and service of the original complaint), Nvidia has knowledge of the ’578 Patent and the infringing nature of the Accused Products. Nvidia has been, and currently is, contributorily infringing the ’578 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f). For example, the identified hardware and/or software components and functionality in Nvidia’s products based on and/or using “Tensor Core” GPU architectures with Tensor Memory Accelerator (TMA), GigaThread thread Scheduler, and/or NVLink/NVSwitch functionality constitute a material part of the inventions claimed in the ’578 Patent, are especially made or adapted to infringe the ’578 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence cited above and in Exhibit 10.

**ANSWER:** Defendant denies the allegations of paragraph 24 of the Amended Complaint. Defendant further incorporates by reference paragraphs 74 and 75 of Defendant’s Defenses as though fully restated herein.

25. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Nvidia has injured Plaintiff and is liable for infringement of the ’578 Patent pursuant to 35 U.S.C. § 271.

**ANSWER:** Defendant denies the allegations in paragraph 25 of the Amended Complaint.

26. On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, any predecessor assignees to the ’578 Patent, and any licensees did not make, offer for sale, or sell products that practice(d) the ’578 Patent during the relevant time period or were not required to mark during

the relevant time period.

**ANSWER:** Paragraph 26 of the Amended Complaint states legal conclusions to which no response is required. To the extent a response is required, Defendant lacks information sufficient to form a belief as to the allegations of paragraph 26 of the Amended Complaint and therefore denies them on that basis.

27. As described above, Nvidia obtained knowledge of Mila's patent portfolio and that certain Nvidia products infringe Mila's patents as of at least December 3, 2024, but has not ceased its infringing activities. Nvidia's infringement of the '578 Patent has been and continues to be willful and deliberate. Nvidia also has knowledge of the '578 Patent by way of the original complaint and, to the extent it does not cease its infringing activities, its infringement is and continues to be willful and deliberate.

**ANSWER:** Defendant denies the allegations in paragraph 27 of the Amended Complaint. Defendant further incorporates by reference paragraphs 87–89 of Defendant's Defenses as though fully restated herein.

28. As a result of Nvidia's direct and indirect infringement of the '578 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Nvidia's infringement, but in no event less than a reasonable royalty for the use made of the invention by Nvidia, together with interest and costs as fixed by the Court.

**ANSWER:** Defendant denies the allegations in paragraph 28 of the Amended Complaint.

## COUNT III

## [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 7,757,048

29. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

**ANSWER:** Defendant incorporates by reference its responses to the foregoing paragraphs as though fully set forth herein.

30. Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 7,757,048, titled "Data processor apparatus and memory interface." The '048 Patent was duly and legally issued by the United States Patent and Trademark Office on July 13, 2010. A true and correct copy of the '048 Patent is attached as Exhibit 16.

**ANSWER:** Defendant admits that the '048 Patent is entitled "Data processor apparatus and memory interface," and was issued on July 13, 2010. Defendant admits that Exhibit 16 purports to be an uncertified copy of the '048 Patent. Paragraph 30 of the Amended Complaint otherwise states legal conclusions to which no response is required. To the extent a response is required, Defendant denies that the '048 Patent was duly and legally issued and lacks information sufficient to form a belief as to the remaining allegations of paragraph 30 of the Amended Complaint and therefore denies them on that basis.

31. On information and belief, Nvidia has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation Nvidia's products based on and/or using "Tensor Core" Graphics Processing Unit ("GPU") architectures (such as Nvidia's "Hopper" and "Blackwell" GPUs, including at least the H100, B100, and B200 Tensor Core GPUs, the DGX H100 the DGX H200) and Nvidia products with architectures that combine Central Processing Units ("CPUs") (such as Nvidia's "Grace" CPU) with Nvidia GPUs (such as Nvidia's Grace Hopper and Grace Blackwell architectures, including at least the Nvidia GH200 Grace Hopper Superchip and the Nvidia GB200 Grace Blackwell Superchip) ("Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more

claims of the ’048 Patent. Identification of the Accused Products will be provided in Plaintiff’s infringement contentions disclosed pursuant to the Court’s scheduling order.

**ANSWER:** Defendant denies all allegations of patent infringement, whether literal or under the doctrine of equivalents. The remaining allegations in paragraph 31 pertain to case management, to which no response is required.

32. The Accused Products satisfy all claim limitations of one or more claims of the ’048 Patent. A claim chart comparing exemplary independent claim 1 of the ’048 Patent to representative Accused Products is attached as Exhibit 17.

**ANSWER:** Defendant denies the allegations of paragraph 32 of the Amended Complaint and Exhibit 17 attached thereto.

33. On December 3, 2024, Mila sent Nvidia a letter indicating that Nvidia’s “various products infringe MILA patents,” and identified the asserted ’296, ’578, ’048, ’975, ’436, and ’136 Patents. Exhibit 3 (Dec. 3, 2024 Notice Letter). The December 3 letter also included a chart outlining how Nvidia’s CUDA-compatible GPUs infringe the ’048 Patent. Mila sent another letter on March 13, 2025 to Nvidia, which reiterated the points in the December 3 letter. *See* Exhibits 4-6 (March 13, 2025 Letters). On April 15, 2025, Nvidia responded to Mila, indicating that it “will investigate the intellectual property you have referenced.” Exhibit 7 (April 15, 2025 Letter).

**ANSWER:** Defendant admits that Exhibits 3-7 purport to be copies of correspondence between Mila and Defendant. To the extent the allegations of paragraph 33 purport to quote from or characterize the contents of written documents, those documents speak for themselves. Defendant denies the remaining allegations in paragraph 33 of the Amended Complaint.

34. Nvidia knowingly and intentionally induces infringement of one or more claims

of the ’048 Patent in violation of 35 U.S.C. § 271(b). As of December 3, 2024 (or at least as of the time of the filing and service of the original complaint), Nvidia has knowledge of the ’048 Patent and the infringing nature of the Accused Products. Despite this knowledge of the ’048 Patent, Nvidia continues to actively encourage and instruct its customers and end users (for example, through online instruction and other online publications cited in Exhibit 17) to use the Accused Products in ways that directly infringe the ’048 Patent. For example, Nvidia advertises that the Accused Products include the “Tensor Memory Accelerator (TMA)” and GigaThread thread Scheduler. *See* Exhibit 11 (https://developer.nvidia.com/blog/nvidia-hopper-architecture-indepth/); Exhibit 12 (https://resources.nvidia.com/en-us-hopper-architecture/nvidia-h100-tensor-c) at 11; Exhibit 13 (https://www.nvidia.com/content/PDF/fermi_white_papers/NVIDIAFermiComputeArchitecture Whitepaper.pdf) at 18. In addition, Nvidia advertises the benefits of its NVLink/NVSwitch GPU functionality. *See* Exhibit 14 (https://resources.nvidia.com/en-us-dgx-systems/dgx-ai-4?ncid=noncid); Exhibit 12 (https://resources.nvidia.com/en-us-hopper-architecture/nvidia-h100-tensorc? ncid=no-ncid) at 47. Nvidia also instructs its customers and end users on how to configure and use the Accused Products in an infringing manner, including through the use of the CUDA C++ programming guide. *See* Exhibit 15 (https://docs.nvidia.com/cuda/cuda-c-programming-guide/). Nvidia provides these instructions and materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts. Nvidia also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the ’048 Patent, thereby specifically intending for and inducing its customers to infringe the ’048 Patent through the customers’ normal and customary use of the Accused Products.

**ANSWER:** Defendant denies the allegations of paragraph 34 of the Amended Complaint. Defendant further incorporates by reference paragraphs 74 and 75 of Defendant's Defenses as though fully restated herein.

35. Nvidia has also infringed, and continues to infringe, one or more claims of the '048 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the '048 Patent, are especially made or adapted to infringe the '048 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use. As of December 3, 2024 (or at least as of the time of filing and service of the original complaint), Nvidia has knowledge of the '048 Patent and the infringing nature of the Accused Products. Nvidia has been, and currently is, contributorily infringing the '048 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f). For example, the identified hardware and/or software components and functionality in Nvidia's products based on and/or using "Tensor Core" GPU architectures with Tensor Memory Accelerator (TMA), GigaThread thread Scheduler, and/or NVLink/NVSwitch functionality constitute a material part of the inventions claimed in the '048 Patent, are especially made or adapted to infringe the '048 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence cited above and in Exhibit 17.

**ANSWER:** Defendant denies the allegations of paragraph 35 of the Amended Complaint. Defendant further incorporates by reference paragraphs 74 and 75 of Defendant's Defenses as though fully restated herein.

36. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Nvidia has injured Plaintiff and is liable for infringement of the '048 Patent pursuant to 35 U.S.C. § 271.

**ANSWER:** Defendant denies the allegations in paragraph 36 of the Amended Complaint.

37. On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, any predecessor assignees to the ’048 Patent, and any licensees did not make, offer for sale, or sell products that practice(d) the ’048 Patent during the relevant time period or were not required to mark during the relevant time period.

**ANSWER:** Paragraph 37 of the Amended Complaint states legal conclusions to which no response is required. To the extent a response is required, Defendant lacks information sufficient to form a belief as to the allegations of paragraph 37 of the Amended Complaint and therefore denies them on that basis.

38. As described above, Nvidia obtained knowledge of Mila’s patent portfolio and that certain Nvidia products infringe Mila’s patents as of at least December 3, 2024, but has not ceased its infringing activities. Nvidia’s infringement of the ’048 Patent has been and continues to be willful and deliberate. Nvidia also has knowledge of the ’048 Patent by way of the original complaint and, to the extent it does not cease its infringing activities, its infringement is and continues to be willful and deliberate.

**ANSWER:** Defendant denies the allegations in paragraph 38 of the Amended Complaint. Defendant further incorporates by reference paragraphs 87–89 of Defendant’s Defenses as though fully restated herein.

39. As a result of Nvidia’s direct and indirect infringement of the ’048 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Nvidia’s infringement, but in no event less than a reasonable royalty for the use made of the invention by Nvidia, together with interest and costs as fixed by the Court.

**ANSWER:** Defendant denies the allegations in paragraph 39 of the Amended Complaint.

**COUNT IV**

**[ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 8,275,975**

40. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

**ANSWER:** Defendant incorporates by reference its responses to the foregoing paragraphs as though fully set forth herein.

41. Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 8,275,975, titled "Sequencer controlled system and method for controlling timing of operations of functional units." The '975 Patent was duly and legally issued by the United States Patent and Trademark Office on September 25, 2012. A true and correct copy of the '975 Patent is attached as Exhibit 18.

**ANSWER:** Defendant admits that the '975 Patent is entitled "Sequencer controlled system and method for controlling timing of operations of functional units," and was issued on September 25, 2012. Defendant admits that Exhibit 18 purports to be an uncertified copy of the '975 Patent. Paragraph 41 of the Amended Complaint otherwise states legal conclusions to which no response is required. To the extent a response is required, Defendant denies that the '975 Patent was duly and legally issued and lacks information sufficient to form a belief as to the remaining allegations of paragraph 41 of the Amended Complaint and therefore denies them on that basis.

42. On information and belief, Nvidia has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation Nvidia products

supporting “Multi-Instance GPU” (“MIG”) technology (for example, RTX PRO 6000 Blackwell Server Edition, RTX PRO 6000 Blackwell Workstation Edition, RTX PRO 6000 Blackwell Max- Q Workstation Edition, GB200, B200, H100-SXM5. H100-PCIE. H100-SXM5, H100-PCIE, H100 on GH200, H200-SXM5, H200 NVL, A100-SXM4, A100-SXM4, A100-PCIE, A100- PCIE, and A30) (“Accused Products”), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the ’975 Patent. Identification of the Accused Products will be provided in Plaintiff’s infringement contentions disclosed pursuant to the Court’s scheduling order.

**ANSWER:** Defendant denies all allegations of patent infringement, whether literal or under the doctrine of equivalents. The remaining allegations in paragraph 42 pertain to case management, to which no response is required.

43. The Accused Products satisfy all claim limitations of one or more claims of the ’975 Patent. A claim chart comparing exemplary independent claim 1 of the ’975 Patent to representative Accused Products is attached as Exhibit 19.

**ANSWER:** Defendant denies the allegations of paragraph 43 of the Amended Complaint and Exhibit 19 attached thereto.

44. Nvidia obtained notice of the ’975 Patent as of at least June 20, 2014 through the Patent Office’s Non-Final Rejection identifying the application that issued as the ’975 Patent (U.S. Patent App. Pub. No. 2009/0193234) as prior art to U.S. Patent App. No. 13/191,364, which issued as U.S. Patent 10,817,043 to Nvidia.

**ANSWER:** Defendant admits that U.S. Patent App. No. 13/191,364 issued as U.S. Patent 10,817,043, which is assigned to Nvidia. Defendant denies any characterization inconsistent with the June 20, 2014 Non-Final Rejection in the file history of U.S. Patent App. No. 13/191,364,

which speaks for itself. The remaining allegations of Paragraph 44 of the Amended Complaint state legal conclusions to which no response is required. To the extent a response is required, Defendant denies them.

45. On December 3, 2024, Mila sent Nvidia a letter indicating that Nvidia's "various products infringe MILA patents," and identified the asserted '296, '578, '048, '975, '436, and '136 Patents. Exhibit 3 (Dec. 3, 2024 Notice Letter). Mila sent another letter on March 13, 2025 to Nvidia, which reiterated the points in the December 3 letter. *See* Exhibits 4-6 (March 13, 2025 Letters). On April 15, 2025, Nvidia responded to Mila, indicating that it "will investigate the intellectual property you have referenced." Exhibit 7 (April 15, 2025 Letter).

**ANSWER:** Defendant admits that Exhibits 3-7 purport to be copies of correspondence between Mila and Defendant. To the extent the allegations of paragraph 45 purport to quote from or characterize the contents of written documents, those documents speak for themselves. Defendant denies the remaining allegations in paragraph 45 of the Amended Complaint.

46. Nvidia knowingly and intentionally induces infringement of one or more claims of the '975 Patent in violation of 35 U.S.C. § 271(b). As of December 3, 2024 (or at least as of the time of the filing and service of the original complaint), Nvidia has knowledge of the '975 Patent and the infringing nature of the Accused Products. Despite this knowledge of the '975 Patent, Nvidia continues to actively encourage and instruct its customers and end users (for example, through online instruction and other online publications cited in Exhibit 19) to use the Accused Products in ways that directly infringe the '975 Patent. For example, Nvidia advertises that the Accused Products include Multi-Instance GPU and GPU System Processor (GSP) functionality. *See* Exhibit 20 (https://www.nvidia.com/en-us/technologies/multi-instance-gpu/); Exhibit 21 (https://www.youtube.com/watch?v=C5A9z_Yk0KA&t=712s). Nvidia also instructs

its customers and end users on how to configure and use the Accused Products in an infringing manner, including through the use of the Nvidia open-gpu-kernel modules. *See* Exhibit 22 (https://github.com/NVIDIA/open-gpu-kernel-modules/blob/main/src/nvidia/src/kernel/gpu/gsp/arch/ampere/kernel_gsp_ga102.c). Nvidia provides these instructions and materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts. Nvidia also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the ’975 Patent, thereby specifically intending for and inducing its customers to infringe the ’975 Patent through the customers’ normal and customary use of the Accused Products.

**ANSWER:** Defendant denies the allegations of paragraph 46 of the Amended Complaint. Defendant further incorporates by reference paragraphs 74 and 75 of Defendant’s Defenses as though fully restated herein.

47. Nvidia has also infringed, and continues to infringe, one or more claims of the ’975 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the ’975 Patent, are especially made or adapted to infringe the ’975 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use. As of December 3, 2024 (or at least as of the time of filing and service of the original complaint), Nvidia has knowledge of the ’975 Patent and the infringing nature of the Accused Products. Nvidia has been, and currently is, contributorily infringing the ’975 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f). For example, the identified hardware and/or software components and functionality in Nvidia’s NVIDIA products supporting “Multi-Instance GPU” (“MIG”) functionality constitute a material part of the inventions claimed in the ’975 Patent, are especially made or adapted to

infringe the ’975 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence cited above and in Exhibit 19.

**ANSWER:** Defendant denies the allegations of paragraph 47 of the Amended Complaint. Defendant further incorporates by reference paragraphs 74 and 75 of Defendant’s Defenses as though fully restated herein.

48. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Nvidia has injured Plaintiff and is liable for infringement of the ’975 Patent pursuant to 35 U.S.C. § 271.

**ANSWER:** Defendant denies the allegations in paragraph 48 of the Amended Complaint.

49. On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, any predecessor assignees to the ’975 Patent, and any licensees did not make, offer for sale, or sell products that practice(d) the ’975 Patent during the relevant time period or were not required to mark during the relevant time period.

**ANSWER:** Paragraph 49 of the Amended Complaint states legal conclusions to which no response is required. To the extent a response is required, Defendant lacks information sufficient to form a belief as to the allegations of paragraph 49 of the Amended Complaint and therefore denies them on that basis.

50. As described above, Nvidia obtained knowledge of Mila’s patent portfolio and that certain Nvidia products infringe Mila’s patents as of at least December 3, 2024, but has not ceased its infringing activities. Nvidia’s infringement of the ’975 Patent has been and continues to be willful and deliberate. Nvidia also has knowledge of the ’975 Patent by way of the original complaint and, to the extent it does not cease its infringing activities, its infringement is and

continues to be willful and deliberate.

**ANSWER:** Defendant denies the allegations in paragraph 50 of the Amended Complaint. Defendant further incorporates by reference paragraphs 87–89 of Defendant's Defenses as though fully restated herein.

51. As a result of Nvidia's direct and indirect infringement of the '975 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Nvidia's infringement, but in no event less than a reasonable royalty for the use made of the invention by Nvidia, together with interest and costs as fixed by the Court.

**ANSWER:** Defendant denies the allegations in paragraph 51 of the Amended Complaint.

**COUNT V**

**[ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 7,966,436**

52. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

**ANSWER:** Defendant incorporates by reference its responses to the foregoing paragraphs as though fully set forth herein.

53. Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 7,966,436, titled "Data transmitter having high and low speed transmission units." The '436 Patent was duly and legally issued by the United States Patent and Trademark Office on June 21, 2011. A true and correct copy of the '436 Patent is attached as Exhibit 23.

**ANSWER:** Defendant admits that the '436 Patent is entitled "Data transmitter having high and low speed transmission units," and was issued on June 21, 2011. Defendant admits that Exhibit 23 purports to be an uncertified copy of the '436 Patent. Paragraph 53 of the Amended

Complaint otherwise states legal conclusions to which no response is required. To the extent a response is required, Defendant denies that the ’436 Patent was duly and legally issued and lacks information sufficient to form a belief as to the remaining allegations of paragraph 53 of the Amended Complaint and therefore denies them on that basis.

54. On information and belief, Nvidia has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation Nvidia’s products incorporating a DSI interface (including at least the Nvidia Tegra X1, Jetson TX2, Jetson TX1, and Jetson Nano products) (“Accused Products”), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the ’436 Patent. Identification of the Accused Products will be provided in Plaintiff’s infringement contentions disclosed pursuant to the Court’s scheduling order.

**ANSWER:** Defendant denies all allegations of patent infringement, whether literal or under the doctrine of equivalents. The remaining allegations in paragraph 54 pertain to case management, to which no response is required.

55. The Accused Products satisfy all claim limitations of one or more claims of the ’436 Patent. A claim chart comparing exemplary independent claim 1 of the ’436 Patent to representative Accused Products is attached as Exhibit 24.

**ANSWER:** Defendant denies the allegations of paragraph 55 of the Amended Complaint and Exhibit 24 attached thereto.

56. On December 3, 2024, Mila sent Nvidia a letter indicating that Nvidia’s “various products infringe MILA patents,” and identified the asserted ’296, ’578, ’048, ’975,’436, and ’136 Patents. Exhibit 3 (Dec. 3, 2024 Notice Letter). Mila sent another letter on March 13, 2025 to Nvidia, which reiterated the points in the December 3 letter. *See* Exhibits 4-6 (March 13, 2025

Letters). On April 15, 2025, Nvidia responded to Mila, indicating that it "will investigate the intellectual property you have referenced." Exhibit 7 (April 15, 2025 Letter).

**ANSWER:** Defendant admits that Exhibits 3-7 purport to be copies of correspondence between Mila and Defendant. To the extent the allegations of paragraph 56 purport to quote from or characterize the contents of written documents, those documents speak for themselves. Defendant denies the remaining allegations in paragraph 56 of the Amended Complaint.

57. Nvidia knowingly and intentionally induces infringement of one or more claims of the '436 Patent in violation of 35 U.S.C. § 271(b). As of December 3, 2024 (or at least as of the time of the filing and service of the original complaint), Nvidia has knowledge of the '436 Patent and the infringing nature of the Accused Products. Despite this knowledge of the '436 Patent, Nvidia continues to actively encourage and instruct its customers and end users (for example, through online instruction and other online publications cited in Exhibit 24) to use the Accused Products in ways that directly infringe the '436 Patent. For example, Nvidia advertises that the Accused Products include the Display Serial Interface (DSI) from the MIPI standard. *See* Exhibit 8 (Technical Reference Manual Tegra X1 Mobile Processor, Tegra_X1_TRM_DP07225001_v1.3p.pdf) at 2030; *see also, e.g.*, Exhibit 25 (https://openzeka.com/en/wp-content/uploads/2022/08/JetsonNano_DataSheet_DS09366001v1.1-1.pdf?srsltid=AfmBOoqGh4FU8KwBga0kv1h1uMRrJ_UA2dF6zusxFUkZNDP2UwRi0uu6). Nvidia also instructs its customers and end users on how to configure and use the Accused Products in an infringing manner, including through the use of the Display Serial Interface (DSI) from the MIPI standard. *See* Exhibit 8 (Technical Reference Manual Tegra X1 Mobile Processor, Tegra_X1_TRM_DP07225001_v1.3p.pdf) at 2030. Nvidia provides these instructions and materials knowing and intending (or with willful blindness to the fact) that its customers and end

users will commit these infringing acts. Nvidia also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '436 Patent, thereby specifically intending for and inducing its customers to infringe the '436 Patent through the customers' normal and customary use of the Accused Products.

**ANSWER:** Defendant denies the allegations of paragraph 57 of the Amended Complaint. Defendant further incorporates by reference paragraphs 74 and 75 of Defendant's Defenses as though fully restated herein.

58. Nvidia has also infringed, and continues to infringe, one or more claims of the '436 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the '436 Patent, are especially made or adapted to infringe the '436 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use. As of December 3, 2024 (or at least as of the time of filing and service of the original complaint), Nvidia has knowledge of the '436 Patent and the infringing nature of the Accused Products. Nvidia has been, and currently is, contributorily infringing the '436 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f). For example, the identified hardware and/or software components and functionality in Nvidia's products with Display Serial Interface (DSI) functionality from the MIPI standard constitute a material part of the inventions claimed in the '436 Patent, are especially made or adapted to infringe the '436 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence cited above and in Exhibit 24.

**ANSWER:** Defendant denies the allegations of paragraph 58 of the Amended Complaint. Defendant further incorporates by reference paragraphs 74 and 75 of Defendant's Defenses as though fully restated herein.

59. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Nvidia has injured Plaintiff and is liable for infringement of the ’436 Patent pursuant to 35 U.S.C. § 271.

**ANSWER:** Defendant denies the allegations in paragraph 59 of the Amended Complaint.

60. On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, any predecessor assignees to the ’436 Patent, and any licensees did not make, offer for sale, or sell products that practice(d) the ’436 Patent during the relevant time period or were not required to mark during the relevant time period.

**ANSWER:** Paragraph 60 of the Amended Complaint states legal conclusions to which no response is required. To the extent a response is required, Defendant lacks information sufficient to form a belief as to the allegations of paragraph 60 of the Amended Complaint and therefore denies them on that basis.

61. As described above, Nvidia obtained knowledge of Mila’s patent portfolio and that certain Nvidia products infringe Mila’s patents as of at least December 3, 2024, but has not ceased its infringing activities. Nvidia’s infringement of the ’436 Patent has been and continues to be willful and deliberate. Nvidia also has knowledge of the ’436 Patent by way of the original complaint and, to the extent it does not cease its infringing activities, its infringement is and continues to be willful and deliberate.

**ANSWER:** Defendant denies the allegations in paragraph 61 of the Amended Complaint. Defendant further incorporates by reference paragraphs 87–89 of Defendant’s Defenses as though fully restated herein.

62. As a result of Nvidia’s direct and indirect infringement of the ’436 Patent,

Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Nvidia's infringement, but in no event less than a reasonable royalty for the use made of the invention by Nvidia, together with interest and costs as fixed by the Court.

**ANSWER:** Defendant denies the allegations in paragraph 62 of the Amended Complaint.

**COUNT VI**

**[ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 8,151,136**

63. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

**ANSWER:** Defendant incorporates by reference its responses to the foregoing paragraphs as though fully set forth herein.

64. Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 8,151,136, titled "Method and device for correcting code data error." The '136 Patent was duly and legally issued by the United States Patent and Trademark Office on April 3, 2012. A true and correct copy of the '136 Patent is attached as Exhibit 26.

**ANSWER:** Defendant admits that the '136 Patent is entitled "Method and device for correcting code data error," and was issued on April 3, 2012. Defendant admits that Exhibit 26 purports to be an uncertified copy of the '136 Patent. Defendant lacks information sufficient to form a belief as to the remaining allegations of paragraph 64 of the Amended Complaint and therefore denies them on that basis.

65. On information and belief, Nvidia has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation Nvidia's Jetson AGX Orin Series System-on-Module that include an NVIDIA Orin Series SoC (System-on-

Chip) ("Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '136 Patent. Identification of the Accused Products will be provided in Plaintiff's infringement contentions disclosed pursuant to the Court's scheduling order.

**ANSWER:** Defendant denies all allegations of patent infringement, whether literal or under the doctrine of equivalents. The remaining allegations in paragraph 65 pertain to case management, to which no response is required.

66. The Accused Products satisfy all claim limitations of one or more claims of the '136 Patent. A claim chart comparing exemplary independent claim 1 of the '136 Patent to representative Accused Products is attached as Exhibit 27.

**ANSWER:** Defendant denies the allegations of paragraph 66 of the Amended Complaint and Exhibit 27 attached thereto.

67. On December 3, 2024, Mila sent Nvidia a letter indicating that Nvidia's "various products infringe MILA patents," and identified the asserted '296, '578, '048, '975, '436, and '136 Patents. Exhibit 3 (Dec. 3, 2024 Notice Letter). Mila sent another letter on March 13, 2025 to Nvidia, which reiterated the points in the December 3 letter. *See* Exhibits 4-6 (March 13, 2025 Letters). On April 15, 2025, Nvidia responded to Mila, indicating that it "will investigate the intellectual property you have referenced." Exhibit 7 (April 15, 2025 Letter).

**ANSWER:** Defendant admits that Exhibits 3-7 purport to be copies of correspondence between Mila and Defendant. To the extent the allegations of paragraph 67 purport to quote from or characterize the contents of written documents, those documents speak for themselves. Defendant denies the remaining allegations in paragraph 67 of the Amended Complaint.

68. Nvidia knowingly and intentionally induces infringement of one or more claims

of the ’136 Patent in violation of 35 U.S.C. § 271(b). As of December 3, 2024 (or at least as of the time of the filing and service of this amended complaint), Nvidia has knowledge of the ’136 Patent and the infringing nature of the Accused Products. Despite this knowledge of the ’136 Patent, Nvidia continues to actively encourage and instruct its customers and end users (for example, through online instruction and other online publications cited in Exhibit 27) to use the Accused Products in ways that directly infringe the ’136 Patent. For example, Nvidia advertises that the Accused Products include “backup copies”/”shadow copies” of materials to boot from in an “A/B Slot Layout.” *See* Exhibit 28 (Bootloader – Update and Redundancy, https://docs.nvidia.com/jetson/archives/r35.4.1/DeveloperGuide/text/SD/Bootloader/UpdateAndRedundancy.html). Nvidia also instructs its customers and end users on how to configure and use the Accused Products in an infringing manner, including teaching that, “based on runtime decisions, the correct copy of the binary is loaded to continue with the boot process.” *See id.* Nvidia provides these instructions and materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts. Nvidia also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the ’136 Patent, thereby specifically intending for and inducing its customers to infringe the ’136 Patent through the customers’ normal and customary use of the Accused Products.

**ANSWER:** Defendant denies the allegations of paragraph 68 of the Amended Complaint. Defendant further incorporates by reference paragraphs 74 and 75 of Defendant’s Defenses as though fully restated herein.

69. Nvidia has also infringed, and continues to infringe, one or more claims of the ’136 Patent by selling, offering for sale, or importing into the United States, the Accused

Products, knowing that the Accused Products constitute a material part of the inventions claimed in the ’136 Patent, are especially made or adapted to infringe the ’136 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use. As of December 3, 2024 (or at least as of the time of filing and service of this amended complaint), Nvidia has knowledge of the ’136 Patent and the infringing nature of the Accused Products. Nvidia has been, and currently is, contributorily infringing the ’136 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f). For example, the identified hardware and/or software components and functionality in Nvidia’s Jetson AGX Orin Series System-on-Module that include an NVIDIA Orin Series SoC (System-on-Chip) constitute a material part of the inventions claimed in the ’136 Patent, are especially made or adapted to infringe the ’136 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence cited above and in Exhibit 27.

**ANSWER:** Defendant denies the allegations of paragraph 69 of the Amended Complaint. Defendant further incorporates by reference paragraphs 74 and 75 of Defendant’s Defenses as though fully restated herein.

70. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Nvidia has injured Plaintiff and is liable for infringement of the ’136 Patent pursuant to 35 U.S.C. § 271.

**ANSWER:** Defendant denies the allegations in paragraph 70 of the Amended Complaint.

71. On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, any predecessor assignees to the ’136 Patent, and any licensees did not make, offer for sale, or sell products that practice(d) the ’136 Patent during the relevant time period or were not required to mark during

the relevant time period.

**ANSWER:** Paragraph 71 of the Amended Complaint states legal conclusions to which no response is required. To the extent a response is required, Defendant lacks information sufficient to form a belief as to the allegations of paragraph 71 of the Amended Complaint and therefore denies them on that basis.

72. As described above, Nvidia obtained knowledge of Mila's patent portfolio and that certain Nvidia products infringe Mila's patents as of at least December 3, 2024, but has not ceased its infringing activities. Nvidia's infringement of the '136 Patent has been and continues to be willful and deliberate. Nvidia also has knowledge of the '136 Patent by way of this amended complaint and, to the extent it does not cease its infringing activities, its infringement is and continues to be willful and deliberate.

**ANSWER:** Defendant denies the allegations in paragraph 72 of the Amended Complaint. Defendant further incorporates by reference paragraphs 87–89 of Defendant's Defenses as though fully restated herein.

73. As a result of Nvidia's direct and indirect infringement of the '136 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Nvidia's infringement, but in no event less than a reasonable royalty for the use made of the invention by Nvidia, together with interest and costs as fixed by the Court.

**ANSWER:** Defendant denies the allegations in paragraph 73 of the Amended Complaint.

## PRAYER FOR RELIEF

**ANSWER:** Defendant denies that Plaintiff is entitled to any of the relief requested in its Prayer for Relief.

## DEMAND FOR JURY TRIAL

**ANSWER:** Defendant admits that the Amended Complaint sets forth a jury demand

pursuant to Rule 38 of the Federal Rules of Civil Procedure.

* * *

## DEFENSES

Defendant asserts the following defenses in response to the allegations of Plaintiff's Amended Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. Defendant reserves the right to assert any additional defenses as they become known during the course of this action or to the extent they are not otherwise deemed affirmative defenses by law.

### First Defense: Non-Infringement

74. Defendant does not infringe and has not infringed, either literally or under the doctrine of equivalents, any claim of the Asserted Patents, whether directly, indirectly, or contributorily, by inducement, willfully, or otherwise because no Accused Product meets every limitation of even one asserted claim.

75. Plaintiff has stipulated to dismissal of its claims for pre-suit indirect infringement. Dkt. 17. With respect to Plaintiff's claims for post-suit indirect infringement, the Accused Products are materially different than the claims of the Asserted Patents, and Defendant therefore believes in good faith that it does not infringe or cause infringement by others. Accordingly, Defendant does not intend for others to infringe the Asserted Patents or knowingly contribute to infringement by others.

### Second Defense: Invalidity

76. All of the asserted claims of the Asserted Patents are invalid for failure to satisfy one or more of the conditions of patentability set forth in Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and/or 112, under related judicial doctrines including the

doctrine of obviousness-type double patenting, and/or any other defense made available under 35 U.S.C. § 282, at least under the apparent interpretations of the asserted claims advanced by Plaintiff in the Amended Complaint.

**Third Defense: Failure to State a Claim**

77. Plaintiff's Amended Complaint fails to state a claim upon which any request for relief can be granted.

**Fourth Defense: Lack of Standing**

78. To the extent that Plaintiff lacks all substantive rights to bring suit and/or to exclude others from practicing the claims of one or more of the Asserted Patents, or to the extent an instrument purporting to assign the Asserted Patents is deemed void, voidable, avoidable, and/or unenforceable, Plaintiff's claims are barred by a lack of standing.

**Fifth Defense: Prosecution History Estoppel, Disclaimer, and/or Disclosure-Dedication**

79. Plaintiff is estopped based on amendments, statements, representations, and admissions made during prosecution of the applications that led to the Asserted Patents, and applications related to the Asserted Patents, from asserting any interpretation of the claims of the Asserted Patents that would be broad enough to cover any of Defendant's products alleged to infringe the Asserted Patents (including assertions under the doctrine of equivalents), under the doctrines of prosecution history estoppel, disclaimer, and/or the disclosure-dedication rule.

**Sixth Defense: Ensnarement and/or Vitiation**

80. Plaintiff's claims for patent infringement are precluded, in whole or in part, by the doctrines of ensnarement and/or vitiation. Plaintiff cannot establish entitlement to its apparently contended claim scope without ensnaring the prior art. Additionally, Plaintiff cannot establish infringement because Plaintiff's apparently contended claim scope would impermissibly vitiate

one or more limitations of the asserted claims.

**Seventh Defense: Reverse Doctrine of Equivalents**

81. Irrespective of literal claim scope, no relief is available to Plaintiff because, among other things, use of the accused technology is substantially different in principle from the purported inventions described in the Asserted Patents, such that even if the accused technology performs the same function as the claims in the Asserted Patents, it does so in a substantially different way, and Plaintiff cannot sustain its burden of proving otherwise, under the reverse doctrine of equivalents. In addition, irrespective of literal claim scope, the accused technology is antithetical in function, way, and result from the alleged inventions disclosed in the Asserted Patents, and Plaintiff cannot sustain its burden of proving otherwise, under the reverse doctrine of equivalents.

**Eighth Defense: Equitable Doctrines**

82. Plaintiff's claims are barred, in whole or in part, by operation of principles of equity, including the doctrines of waiver, acquiescence, laches (e.g., prosecution laches), estoppel, patent misuse, unjust enrichment, constructive trust, setoff, and/or unclean hands.

**Ninth Defense: Government Sales**

83. Plaintiff's claims are barred by 28 U.S.C. § 1498 to the extent they relate to use or manufacture of the alleged inventions of the Asserted Patents by or for the United States. Plaintiff has no remedy for such allegations other than a suit against the United States in the Court of Federal Claims.

**Tenth Defense: Limitation on Damages and Other Relief**

84. Plaintiff's claims for relief are statutorily limited in whole or in part by 35 U.S.C. §§ 286 and/or 287. In addition, to the extent Plaintiff seeks damages for allegedly infringing acts

committed more than six years prior to the filing of the Complaint in this action, it is barred from recovery of such damages.

85. Additionally, to the extent Plaintiff or any licensee of the Asserted Patents failed to properly mark any of their relevant products as required by 35 U.S.C. § 287 or otherwise failed to give proper notice that Defendant's actions allegedly infringed any asserted claim, Defendant is not liable to Plaintiff for the acts alleged to have been performed before Defendant received actual notice of infringement.

**Eleventh Defense: Extraterritoriality**

86. To the extent that Plaintiff's claims are directed to acts occurring outside the United States, those claims for relief are barred or limited by the doctrine of territoriality and the exclusion of extraterritorial conduct from 35 U.S.C. § 271 et seq., including but not limited to § 271(a) and (c).

**Twelfth Defense: No Willful Infringement, Enhancement, or Attorneys' Fees**

87. Plaintiff is not entitled to a finding of willful infringement or to enhanced or increased damages for supposed willful infringement because, irrespective of the fact that Defendant has not committed any acts of infringement, Defendant has not engaged in any conduct that meets the standard for willfulness.

88. Plaintiff stipulated to dismiss without prejudice its allegations of pre-suit willfulness. Dkt. 17. There is no post-suit "willful infringement" because Defendant understands the Accused Products are materially different than the claims of the Asserted Patents and Defendant therefore believes in good faith that it does not infringe.

89. Plaintiff is not entitled to attorneys' fees at least because Plaintiff will not prevail in this action and because this action is not an exceptional case in respect to Defendant's

conduct.

**Thirteenth Defense: License and Exhaustion**

90. Plaintiff's claims for patent infringement are precluded in whole or in part by any express and/or implied license(s) and/or agreement(s) regarding the Asserted Patents. For example, Plaintiff's claims are precluded in whole or in part by express and/or implied license(s) and/or agreement(s) to the extent that any of the allegedly infringing products or conduct is directly or indirectly subject to rights granted to Defendant or another entity or the public (e.g., based on participation in a standards-setting organization and/or an open-sourcing effort) to practice the patents. Additionally, Plaintiff's claims are barred, in whole or in part, because Defendant has rights under one or more licenses, sublicenses, releases, covenants, and/or other agreements that authorize activities accused of infringement. Those rights derive from agreements involving predecessors and successors in interest to the Asserted Patents and are binding on Plaintiff as a subsequent owner.

**Fourteenth Defense: No Injunctive Relief**

91. Plaintiff is not entitled to any form of injunctive relief at least because Plaintiff has not met the requirements for obtaining injunctive relief, including, but not limited to the fact that (1) Plaintiff has not suffered and will not suffer any harm—much less irreparable harm—due to Defendant's conduct, (2) Plaintiff's demand for alleged damages concedes the adequacy of legal remedies, (3) Plaintiff fails to make any showing of hardships, much less that the balance of hardships tips in its favor (which it does not); and (4) Plaintiff identifies no public interests that would be furthered by such a remedy. Plaintiff's claims for injunctive relief are further barred, in whole, or in part, by principles of equity.

**Fifteenth Defense: Inequitable Conduct as to the ’048 Patent**

92. Defendant alleges that the ’048 patent is unenforceable because the applicant and its patent attorney committed inequitable conduct by intentionally withholding material prior art, specifically Fujibayashi et al., US2004/0064637 (“Fujibayashi”). Fujibayashi was cited and relied upon by the USPTO to reject similar claims in co-pending and related U.S. Application No. 11/380,978, which issued as the ’578 patent.

93. Fujibayashi expressly discloses and/or renders obvious all limitations of asserted claim 1 of the ’048 patent. Despite being aware of the Examiner’s rejections in the prosecution of the ’578 patent, the applicant and its counsel intentionally withheld Fujibayashi from the examiner of the ’048 prosecution, who worked in a different Art Unit and never reviewed the reference. Had Fujibayashi been disclosed, the USPTO would have rejected the pending claims of the ’048 patent under 35 U.S.C. §§ 102 or 103, and no patent would have issued.

***Who***

94. The individuals who owed a duty of candor to the USPTO under 37 C.F.R. § 1.56(c) and committed inequitable conduct were at least Malcolm Stewart, the first named inventor on the ’048 and ’578 patents, and Esther H. Chong, registered patent attorney of Birch, Stewart, Kolasch & Birch, LLP (“BSKB”), who prosecuted both the ’048 and ’578 patents. Each was aware of Fujibayashi’s materiality based on its use by Examiner Bataille to reject analogous claims in the related ’578 prosecution.

***When***

95. The inequitable conduct occurred during prosecution of the ’048 patent between November 17, 2009, when the examiner first asserted Fujibayashi as a prior art reference in the prosecution of the ’578 patent, and May 18, 2010, when the ’048 patent was allowed.

96. On November 17, 2009, Examiner Pierre-Michel Bataille issued a Final Office Action rejecting claims 1-7 and 9-36 of the ’578 application under 35 U.S.C. § 103 as obvious over Goldstein (US2001/0039607) in view of Fujibayashi, and over Gwilt (U.S. 6,959,351) in view of Fujibayashi. Dkt. 18-1 (“Exhibit A”), Excerpts from ’578 and ’048 Prosecution History at 45-56.

97. On February 4, 2010, the applicant responded to that rejection arguing that Fujibayashi failed to disclose the recited “array controller” limitation. Exhibit A, at 40-44.

98. The claims remained rejected, and on March 16, 2010, the applicant filed a subsequent response and amendment, modifying independent claim 1 to clarify that the array controller is coupled to a plurality of processing units by “a control bus for sending at least one of instructions and commands to each of the plurality of processing units,” among other amendments. Exhibit A, at 26-39. The applicant again argued that Fujibayashi failed to teach the recited “array controller” limitation. Exhibit A, at 35-38. By this date, attorney Esther Chong and inventor Malcolm Stewart were fully aware that Fujibayashi was material prior art to at least the “array controller” limitation of the ’578 patent.

99. On March 31, 2010, Examiner Bataille issued a Non-Final Office Action rejecting claims 1-20, 22, 24-26, and 28-36 of the ’578 application under 35 U.S.C. § 103 as being obvious over Goldstein in view of Fujibayashi, further in view of Sarkozy (U.S. 5,720,027). Exhibit A, at 16-25. In particular, the examiner cited Fujibayashi paragraphs [0034], [0035], [0039], [0045] and Figures 1 & 4 as rendering the recited array controller elements obvious. This second rejection reinforced Fujibayashi’s materiality to the “array controller” limitation. On the very same day, the applicant amended the “controller” limitations in the claims of the ’048

patent application. In its supporting remarks, it made no mention of Fujibayashi. Exhibit A, at 65-74.

100. As shown in the chart below, the ’048 patent contains a “controller” limitation which shares overlapping requirements with the “array controller” limitation in the ’578 patent—namely, providing data to memory and controlling a plurality of processor units to receive such data from such memory. Yet, during the six months between November 17, 2009 and May 18, 2010, the patentee did not submit any Information Disclosure Statements or otherwise identify Fujibayashi as material to the patentability of the ’048 patent—despite amending the “controller” limitations on March 31, 2010, and requesting continued examination of the application on May 7, 2010. On May 18, 2010, Examiner Brian R. Peugh issued a notice of allowance for the ’048 patent without ever seeing Fujibayashi.

| U.S. Patent No. 7,757,048 | U.S. Patent No. 7,805,578 |
|---|---|
| a controller which controls transmission of data from said controller to each processor unit, wherein said controller **transmits a predetermined data unit for one or more of said processor units to said memory**, **controls one or more of said processor units to receive said predetermined data unit from said memory** | an array controller coupled to said plurality of processing units by a control bus for sending at least one of instructions and commands to each of the plurality of processing units, and coupled to said interface by a broadcast bus, said array controller **configured to provide broadcast data to at least said memory location** via said interface and said at least one data bus by first providing said broadcast data to said interface via said broadcast bus, and **control, via said at least one of instructions and commands sent via said control bus, at least one of said plurality of processing units that corresponds to said memory location to receive said broadcast data from said memory location**, |

***What and Where***

101. By failing to disclose Fujibayashi during the prosecution of the ’048 patent, the applicant and its counsel withheld material, non-cumulative information from the USPTO. Examiner Peugh, explicitly allowed claim 1 of the ’048 patent because, in his Reasons for Allowance, he found that “the prior art failed to teach transmitting predetermined data to a plurality of different parts of said memory such that a plurality of copies of said predetermined data are stored in different parts of said memory.” Exhibit A, at 57-63.

102. As shown in the claim chart below, the withheld Fujibayashi reference teaches every element of asserted claim 1 of the ’048 patent, including the “**controller which** . . . transmits said predetermined data unit to a plurality of different parts of said memory . . .” limitation—at least under the broadest reasonable construction standard—and would have rendered asserted claim 1 unpatentable. Fujibayashi would have directly refuted the Examiner’s basis for allowance and would have compelled a rejection had it been disclosed.

| **’048 Patent, Claim 1 Limitation** | **Fujibayashi Exemplary Disclosures** |
|---|---|
| A data processor apparatus, comprising: | “A controller 2 of this embodiment is comprised of a CPU-PKL through CPU-PKN (101) connected to a host computer, and a CPU-PKL through CPU-PKN (101) connected with a plurality of magnetic disks. The CPU-PKL through CPU-PKN (101) connected to the host computer, and the CPU-PKL through CPU-PKN (101) connected with a plurality of magnetic disks, are connected with a plurality of cache memories 113, SM-PKA 108 and SM-PKB 109 by a plurality of access paths, but are connected with a cache memory 113 by way of a selector 114.” [0029]. |
| a memory; | “The controller shown in FIG. 3 is comprised of a plurality of CPU-PK (packages) 301, **a shared memory package (SM-PK) A 303 holding shared memories for storing control information, and a shared memory package (SM-PK) B 304**, all connected by a shared memory bus 302. Each CPU-PK (package) is connected to either a host computer or a disk device. Each CPU-PK (package) has a plurality of CPUs, and |

| | |
|---|---|
| | each CPU performs data transmission from the disk device or the host computer, or controls data transmission to the disk device or the host computer utilizing control information stored in the memory." [0003]. |
| a plurality of processor units couplable to receive data from said memory; and | "**Each CPU-PK has a plurality of CPUs 102** to control the I/F connection to the host 1 or the I/F connected to a magnetic disk 220, **a shared memory path I/F controller (MPA) 111 controlling the access paths to the SM-PKA 108 and SM-PKB 109**, and a **cache memory path I/F controller (DTA) 112 for controlling the access paths to the cache memory package 113**. Data from the host (device) is stored in the cache memory 113, and control information is stored in the shared memory inside the SM-PKA and SM-PKB." [0029]. |
| a controller which controls transmission of data from said controller to each processor unit, wherein said controller transmits a predetermined data unit for one or more of said processor units to said memory, controls one or more of said processor units to receive said predetermined data unit from said memory, | "**A broadcast dedicated bus controller 401 is installed inside the MPA11 in each CPU-PK101. This broadcast dedicated bus controller 401 is connected between a broadcast dedicated bus 0 (402) and the broadcast dedicated bus 1 (403). When a CPU102 is broadcasting to another CPU102, a broadcast request signal is sent to the broadcast dedicated bus controller 401. In order to acquire rights to use the broadcast dedicated bus, the broadcast dedicated bus controller 401 that received the broadcast request signal, sends a request for broadcast dedicated bus usage rights to an arbiter 404 or 405. The arbiters 404 or 405 carry out mediation processing when faced with competing requests from broadcast dedicated bus controllers 401 from another CPU-PK**. **The broadcast dedicated bus controller 401 that was assigned usage rights from the arbiters 404 or 405, sends broadcast data sent from a CPU102, along the broadcast dedicated bus. The broadcast dedicated bus controllers 401, in each CPU-PK other than the CPU-PK that sent the broadcast data, are constantly monitoring the broadcast dedicated bus, and when the transmission of broadcast data on the broadcast dedicated bus is detected, that broadcast data is received and sent to each CPU102 inside the same CPU-PK.** The method for transmission of broadcast data to a CPU102 includes a method for transmitting an interruption signal to the CPU102, **storing the broadcast data in a register**, and a method (polling) for allowing each CPU102 to view the contents of that register." [0039]. |

| | |
|---|---|
| | FIG.4  <br><br>"The second through fifth methods described next have a common feature in that **broadcast data is at one point sent to a shared memory controller or shared memory PK in a common section of the processor inside the controller and in this way, is broadcast to the processors**. Further, in whatever method, the exchange of broadcast data between the processor and the shared memory I/F controller is performed by a method utilizing an interruption signal or a method using register polling." [0042].<br><br>"The main characteristic of this method is the provision of a broadcast interruption signal line 502. A broadcast register group 503 corresponding to each MPA111 is installed inside the shared memory controller (SMA) 110. **A broadcast data transmission source CPU102 writes the broadcast data onto a broadcast data register 504 by way of the shared memory buses 105, 106**. When data is written onto the broadcast data register 504, that broadcast data is also written |

<table>
<tr>
<td></td>
<td>onto each MPA register group 503. Along with this data writing, each MPA broadcast interrupt signal output circuit 505 sends a signal to the broadcast interruption signal line 502 and an interrupt signal is sent to each CPU102 by way of each MPA111.” [0045].

FIG. 5




See also [0034], [0035] and Figures 1 & 4 as cited in the ’578 prosecution history.</td>
</tr>
<tr>
<td>and transmits said predetermined data unit to a plurality of different parts of said memory such that a plurality of copies of said predetermined data unit are stored in different parts of said memory.</td>
<td>“When data is written onto the broadcast data register 504, that broadcast data is also written onto each MPA register group 503.” [0045]; see also [0034], [0035], [0039], [0042], and Figures 4-5.</td>
</tr>
</table>

103. Indeed, except for the final limitation ("and transmits said predetermined data unit to a plurality of different parts of said memory . . ."), Fujibayashi's disclosure of each limitation was expressly acknowledged by the Examiner during prosecution of the '578 patent. The Examiner explained:

> However, **Fujibayashi teaches a plurality of processing units respectively coupled to said plurality of memories** (Fig. 1 & Fig. 4 show plurality of CPUs (102) coupled to respective local memory (103); an interface coupled to said plurality of memories by a plurality of buses (local bus I/F connection interface coupling the memory by a plurality of access paths or local buses 104, Fig. 4) [Par. 0034-0035], **an array controller coupled to said plurality of processing units** by another bus, and coupled to said interface by a broadcast bus (broadcast dedicated bus controller 401, coupled to the local interface 104 through broadcast dedicated bus 402 403, Fig. 4], **said array controller configured to provide broadcast data** via said interface and said plurality of buses, **and control at least one of said plurality of processing units to receive said broadcast data from said memory location** (the array controller connected in a star configuration with the plurality of interfaces by access paths and a common bus connected to the interfaces, the broadcast controller carrying access rights and monitoring the transmission of data over the broadcast dedicated bus) [par. 0039; 0045].

Exhibit A, at 20-21, 48-49 (emphasis added). The applicant was only able to overcome that rejection by adding additional limitations. Exhibit A, at 1 (showing the applicant's final amendment before allowance adding "control, via said at least one of instructions and commands sent via said control bus," "wherein said at least one data bus is thereby used to provide both said data and said broadcast data from said interface to said memory location," and "said interface is further configured to identify said memory locations substantially simultaneously"). The applicant did not add any of those additional limitations to the '048 patent claims.

***How and Why***

104. Had Examiner Peugh been aware of Fujibayashi during prosecution of the '048 patent, the USPTO would have rejected the '048 claims. As shown in the chart above,

Fujibayashi expressly discloses all elements of asserted claim 1, including a controller "transmit[ting] said predetermined data unit to a plurality of different parts of said memory . . .", the particular limitation Examiner Peugh viewed as missing and the basis for allowance of the '048 patent.

105. Because Fujibayashi discloses that limitation, and every other limitation, its omission was outcome-determinative for at least asserted claim 1 and its dependent claims. The USPTO would not have allowed the '048 patent but for the withholding.

***Intent to Deceive***

106. The facts support a reasonable inference of specific intent to deceive the USPTO. The same attorney (Esther Chong) prosecuted both the '048 and '578 applications concurrently, knew that the examiners were in different Art Units (2187 v. 2186), and had already argued Fujibayashi's significance to the "array controller" limitation in the '578 case. *See* Exhibit A at 35-39, 40-44. Despite this, she submitted remarks in response to the Examiner's Final Rejection during the six-month overlap regarding other prior-art references—but never disclosed Fujibayashi. Mr. Stewart, who signed declarations and, upon information and belief, reviewed responses in both prosecutions, likewise knew of Fujibayashi's materiality and failed to ensure its disclosure.

107. Despite knowing that the '048 and '578 patents shared the same specification, inventors, priority chain, and similar claim elements, neither Ms. Chong nor the applicant disclosed Fujibayashi to Examiner Peugh in the six months of the '048 prosecution during which they had actual notice of Fujibayashi's relevance to the claims, and knew that Examiner Peugh had not cited or considered Fujibayashi before allowing the '048 patent. Their selective omission demonstrates deliberate exploitation of the separate examiners to secure issuance of the

’048 patent. These facts support a reasonable inference that the applicant and its counsel intentionally withheld Fujibayashi to secure allowance of the ’048 patent.

108. Accordingly, the ’048 patent is unenforceable due to inequitable conduct by at least the named inventor and prosecuting counsel, whose intentional failure to disclose the material Fujibayashi reference to Examiner Peugh violated their duty of candor under 37 C.F.R. § 1.56 and resulted in the issuance of a patent that would not otherwise have been granted.

**Sixteenth Defense: Inequitable Conduct as to the ’436 Patent**

109. Defendant alleges that the ’436 patent is unenforceable because at least the named inventors (Bum-Soo Suh, Jong-Keun Na, and Sung-Oh Kim) committed inequitable conduct by intentionally withholding material prior art.

110. The MIPI Alliance (“MIPI”) is a standard setting body that works to design hardware and software interfaces that simplify the integration of components—such as cameras, antennas, and displays—built into devices. MIPI circulates draft standards to its contributing and adopting members. MtekVision was a MIPI Contributing Member when MIPI Alliance Standard for Display Serial Interface V1.0 (the “MIPI standard”) was published and disseminated to member companies by no later than April 2006. The claimed priority date of the ’436 patent is over a year later—December 28, 2007. The MIPI standard is prior art to the ’436 patent under at least pre-AIA 35 U.S.C. § 102(a).

111. The named inventors were knowledgeable about the MIPI standard by way of their employment and association with MtekVision prior to the filing of the application that issued as the ’436 patent. Mila itself acknowledges the relationship between the MIPI standard and the ’436 patent, as Mila mapped the ’436 patent to functionality set forth in the MIPI standard in Exhibit 24 to its Amended Complaint. (Dkt. 14-24.) That relationship is not coincidental; it

reflects the named inventors' knowledge of the MIPI standard when they filed the application for the '436 patent and withheld the MIPI standard from the USPTO.

112. The MIPI standard renders obvious all limitations of asserted claim 1 of the '436 patent, as it describes general functionality set forth in claim 1, and a person of skill in the art would have found the claimed circuitry for implementing that functionality obvious. Despite being aware of the MIPI standard, the named inventors intentionally withheld the reference from the Examiner of the '436 patent. Had the MIPI standard been disclosed, the USPTO would have rejected claim 1 under 35 U.S.C. § 103, and no patent would have issued.

***Who***

113. The individuals who owed a duty of candor to the USPTO under 37 C.F.R. § 1.56(c) and committed inequitable conduct are at least the named inventors of the '436 patent. The named inventors who committed inequitable conduct are: Bum-Soo Suh, Jong-Keun Na, and Sung-Oh Kim.

***When***

114. Inequitable conduct occurred during prosecution of the '436 patent between December 23, 2008, when the named inventors filed the patent application with the USPTO, and June 21, 2011, when the '436 patent issued.

115. On December 23, 2008, the named inventors filed a U.S. patent application for an invention that they knew was rendered obvious by the prior MIPI standard.

116. Additionally, on February 4, 2011, as further discussed below, the named inventors amended the claims to avoid the prior art by reciting a limitation that they knew was rendered obvious by the MIPI standard.

***What and Where***

117. The named inventors withheld material, non-cumulative information from the USPTO. For example, in response to a prior art rejection, they amended claim 1 to require that the low-speed transmission unit "receive backward data from the display device in the low-speed mode, wherein the secondary data includes device data and the backward data includes feedback data." The named inventors knew that the MIPI standard renders that added limitation obvious, as page 51 discloses "bidirectional capability for returning READ data, acknowledge, or error information to the host processor" from the peripheral display, and that "[r]everse-direction signaling shall only use LP (Low Power) mode of transmission." Nonetheless, they intentionally withheld the MIPI standard from the Examiner to obtain allowance of claim 1 despite knowing that the MIPI standard rendered the added limitation obvious. They succeeded, as the Examiner issued a Notice of Allowance in response. From this point through issuance of the ’436 patent, the named inventors failed to file an Information Disclosure Statement listing the MIPI standard.

***How and Why***

118. Had the Examiner been aware of the MIPI standard during prosecution of the ’436 patent, he would have rejected the ’436 claims, as the MIPI standard renders obvious at least the limitation on which he based the allowance of the ’436 patent. The USPTO would not have allowed the ’436 patent but for the named inventors’ withholding of the MIPI standard.

***Intent to Deceive***

119. The facts support a reasonable inference of specific intent to deceive the USPTO. Employees at MtekVision were aware of the MIPI standard when it was disseminated in 2006. Shortly thereafter, the named inventors filed a patent application directed to general functionality of the MIPI standard and avoided other prior art references by amending the claims to recite

additional features rendered obvious by the MIPI standard.

120. Despite knowing of the MIPI standard, the named inventors withheld it from the Examiner. The Examiner did not find the MIPI standard in his prior art search; nonetheless, the named inventors never disclosed the MIPI standard to the Examiner in an Information Disclosure Statement. Moreover, the named inventors obtained an allowance by amending their claims to recite features that were taught or rendered obvious by the MIPI standard. These facts support a reasonable inference that the named inventors intentionally withheld the MIPI standard to secure allowance of the ’436 patent.

121. Accordingly, the ’436 patent is unenforceable due to inequitable conduct by at least the named inventors, whose intentional failure to disclose the material MIPI standard to the Examiner violated their duty of candor under 37 C.F.R. § 1.56 and resulted in the issuance of a patent that would not otherwise have been granted.

**Seventeenth Defense: Prior Commercial Use**

122. Plaintiff’s claims of infringement for one or more Asserted Patents are barred, in whole or in part, under 35 U.S.C. § 273 because Defendant, acting in good faith, commercially used the accused subject matter in the United States at least one year before the earlier of the effective filing date of the claimed invention or any qualifying disclosure under 35 U.S.C. § 102(b).

**DEFENDANT NVIDIA'S COUNTERCLAIMS AGAINST PLAINTIFF**

In support of its Counterclaims against Plaintiff, Defendant alleges as follows:

**NATURE OF THE ACTION**

1. In response to Plaintiff's allegations in the Amended Complaint, Defendant seeks a declaratory judgment that it has not infringed the Asserted Patents under the Patent Laws of the United States, 35 U.S.C. § 271 *et seq*.

**THE PARTIES**

2. Plaintiff Mila US Inc alleges that it is a Texas corporation with its principal place of business at 6500 River Place Blvd, Building 7, Suite 250, Austin, Texas 78730.

3. Defendant Nvidia Corporation is a Delaware corporation with its principal place of business located at 2788 San Tomas Expressway, Santa Clara, CA 95051.

**JURISDICTION AND VENUE**

4. The Court has subject matter jurisdiction over Defendant's declaratory judgment counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

5. The Court has personal jurisdiction over Plaintiff because Plaintiff consented to jurisdiction in this District by filing its Amended Complaint in this action.

6. To the extent that venue is proper and convenient in the underlying patent infringement action, venue is also proper with respect to Defendant's Counterclaims pursuant to 28 U.S.C. §§ 1391 and 1400(b), and because Plaintiff consented to this venue by filing its Amended Complaint in this action.

## FIRST COUNT

## (Declaration of Non-Infringement of U.S. Patent No. 7,924,296)

7. Defendant incorporates by reference and restates the preceding paragraphs 1-6 of its Counterclaims as though fully set therein.

8. Plaintiff has brought an action asserting the ’296 Patent against Defendant and has alleged that it is the legal owner of the ’296 Patent.

9. Plaintiff has alleged and continues to allege that Defendant has infringed and continues to infringe one or more claims of the ’296 Patent.

10. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between Plaintiff and Defendant concerning whether Defendant has infringed and is infringing any valid and enforceable claim of the ’296 Patent.

11. Defendant hereby seeks a declaration that Defendant has not infringed and is not infringing any valid and enforceable claim of the ’296 Patent.

12. A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

## SECOND COUNT

## (Declaration of Non-Infringement of U.S. Patent No. 7,805,578)

13. Defendant incorporates by reference and restates the preceding paragraphs 1-12 of its Counterclaims as though fully set therein.

14. Plaintiff has brought an action asserting the ’578 Patent against Defendant and has alleged that it is the legal owner of the ’578 Patent.

15. Plaintiff has alleged and continues to allege that Defendant has infringed and continues to infringe one or more claims of the ’578 Patent.

16. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between Plaintiff and Defendant concerning whether Defendant has infringed and is infringing any valid and enforceable claim of the ’578 Patent.

17. Defendant hereby seeks a declaration that Defendant has not infringed and is not infringing any valid and enforceable claim of the ’578 Patent.

18. A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

**THIRD COUNT**

**(Declaration of Non-Infringement of U.S. Patent No. 7,757,048)**

19. Defendant incorporates by reference and restates the preceding paragraphs 1-18 of its Counterclaims as though fully set therein.

20. Plaintiff has brought an action asserting the ’048 Patent against Defendant and has alleged that it is the legal owner of the ’048 Patent.

21. Plaintiff has alleged and continues to allege that Defendant has infringed and continues to infringe one or more claims of the ’048 Patent.

22. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between Plaintiff and Defendant concerning whether Defendant has infringed and is infringing any valid and enforceable claim of the ’048 Patent.

23. Defendant hereby seeks a declaration that Defendant has not infringed and is not infringing any valid and enforceable claim of the ’048 Patent.

24. A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

**FOURTH COUNT**

**(Declaration of Non-Infringement of U.S. Patent No. 8,275,975)**

25. Defendant incorporates by reference and restates the preceding paragraphs 1-24 of its Counterclaims as though fully set therein.

26. Plaintiff has brought an action asserting the ’975 Patent against Defendant and has alleged that it is the legal owner of the ’975 Patent.

27. Plaintiff has alleged and continues to allege that Defendant has infringed and continues to infringe one or more claims of the ’975 Patent.

28. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between Plaintiff and Defendant concerning whether Defendant has infringed and is infringing any valid and enforceable claim of the ’975 Patent.

29. Defendant hereby seeks a declaration that Defendant has not infringed and is not infringing any valid and enforceable claim of the ’975 Patent.

30. A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

**FIFTH COUNT**

**(Declaration of Non-Infringement of U.S. Patent No. 7,966,436)**

31. Defendant incorporates by reference and restates the preceding paragraphs 1-30 of its Counterclaims as though fully set therein.

32. Plaintiff has brought an action asserting the ’436 Patent against Defendant and has alleged that it is the legal owner of the ’436 Patent.

33. Plaintiff has alleged and continues to allege that Defendant has infringed and continues to infringe one or more claims of the ’436 Patent.

34. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between Plaintiff and Defendant concerning whether Defendant has infringed and is infringing any valid and enforceable claim of the ’436 Patent.

35. Defendant hereby seeks a declaration that Defendant has not infringed and is not infringing any valid and enforceable claim of the ’436 Patent.

36. A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

**SIXTH COUNT**

**(Declaration of Non-Infringement of U.S. Patent No. 8,151,136)**

37. Defendant incorporates by reference and restates the preceding paragraphs 1-36 of its Counterclaims as though fully set therein.

38. Plaintiff has brought an action asserting the ’136 Patent against Defendant and has alleged that it is the legal owner of the ’136 Patent.

39. Plaintiff has alleged and continues to allege that Defendant has infringed and continues to infringe one or more claims of the ’136 Patent.

40. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between Plaintiff and Defendant concerning whether Defendant has infringed and is infringing any valid and enforceable claim of the ’136 Patent.

41. Defendant hereby seeks a declaration that Defendant has not infringed and is not infringing any valid and enforceable claim of the ’136 Patent.

42. A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights and duties determined by the Court.

**RESERVATION OF RIGHTS**

Defendant expressly reserves the right to assert any additional defenses or counterclaims that may now exist or in the future may be available based on discovery and further factual investigation in this case.

**JURY DEMAND**

Defendant demands a jury trial as to all issues so triable.

**PRAYER FOR RELIEF**

Defendant respectfully requests this Court to order, adjudge, and decree:

A. That this Court enter judgment on Plaintiff's Amended Complaint and Defendant's Counterclaims in favor of Defendant, against Plaintiff, with Plaintiff being awarded no relief of any kind in this action;

B. That this Court enter judgment and/or declarations that Defendant does not infringe the Asserted Patents;

C. That this case be deemed exceptional under 35 U.S.C. § 285 and/or other applicable laws and that Defendant be awarded its fees, costs, expenses, and disbursements in this action, including reasonable attorneys' fees as the prevailing party;

D. That Defendant be granted all other relief the Court finds just and proper.

Dated: September 7, 2026

Respectfully submitted,

By: */s/ Brian C. Nash*

Brian C. Nash (TX Bar No. 24051103)
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX 78701
Tel.: (512) 617-0654
BNash@mofo.com

Daralyn J. Durie (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Tel.: (415) 268-7000
Fax: (415) 268-7522
DDurie@mofo.com

Ryan Malloy (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
Tel.: (213) 892-5200
RMalloy@mofo.com

John R. Lanham (admitted *pro hac vice*)
JLanham@mofo.com
Matthew R. Stephens (TX Bar No. 24129261)
MStephens@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 200
San Diego, CA 92130
Tel.: (858) 720-5100
Fax: (858) 720-5125

James F. Mack (CA Bar No. 322056)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304-1018
Tel.: (650) 813-5600
JMack@mofo.com

Abed R. Balbaky (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Tel.: (212) 468-8000
ABalbaky@mofo.com

*Counsel for Defendant*
*Nvidia Corporation*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on September 7, 2026, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Brian C. Nash*
Brian C. Nash